Cecil P. Wade, Appellant, v. Sterling Gazette Co., a Corporation, d/b/a The Daily Gazette, Preston F. Grandon, et al., Appellees.

Gen. No. 11,816.

Third District.

February 27, 1965.

Kleiman, Cornfield & Feldman, of Chicago, for appellant.

Nettles & Mahoney, of Freeport, and Alexander L. Haglund, of Sterling, for appellees.

CARROLL, J.

This is an action to recover damages for the publication of an alleged libel. The trial court sustained a motion to dismiss the complaint and entered judgment for the defendants. Plaintiff has appealed.

The sole question presented is whether the complaint states a cause of action. Substantially, the al-

legations thereof are that plaintiff was a person of good name, credit and reputation in the City of Rock Falls, Whiteside County, Illinois; that he was held in high esteem by his acquaintances, neighbors, and the general public; that the defendant corporation owned and published a daily newspaper called The Daily Gazette, which was in general circulation in Whiteside County and other areas of Illinois; that Preston Grandon was president of the Sterling Gazette Company, a corporation, and editor of said newspaper; that the other defendants were its officers and publishers; that at the time of publication of the alleged libel plaintiff was a candidate for mayor of Rock Falls at an election held April 18, 1961, and was campaigning for said office; that on April 15, 1961, the defendants wrongfully and maliciously intending to injure the good name of plaintiff, and to bring about his defeat in said election, published a libelous article of and concerning plaintiff which reads as follows:

## NO WORD TAKES PLACE OF "LIAR"!

### (An Editorial)

In an advertisement appearing in today's issue of The Daily Gazette, inserted by Cecil P. Wade, candidate for mayor of Rock Falls, appears this statement:

> "After reading these articles, I endeavored to obtain equal space and equal coverage in this newspaper to answer and refute the assertions made by the writer. My request for fair play fell upon dead ears and the only conclusion that can be drawn is that only the present mayor is afforded such privileges and opportunities."

That statement is a "lie" of the common garden variety, which means that the person accepting responsibility for that statement, Mr. Cecil P. Wade, in the parlance of the street, is an "unadulterated liar."

We dislike using the word "liar"; it is not dignified, it is unbecoming of either a reputable newspaper or its publisher; unfortunately it lowers the author of this editorial to the degraded level of the advertiser.

But under the circumstances, when Mr. Wade called at the office of the writer of this editorial, one Preston F. Grandon, complained that he had not been treated fairly, that he "demanded" space in this newspaper, he was told that he could have that space in the news columns "without cost" to say whatever he pleased, without restriction as to the length of his statement.

Mr. Wade appeared pleased with this solution to what appeared to him to be a problem. In the presence of a witness he ordered the reference above stricken out; said he would prepare another advertisement; that he would also prepare a news story to his own liking.

Mr. Wade appeared to be an honorable man who received every courtesy anyone could extend; was granted the use of The Gazette columns as he requested, something that had never been denied him, which he freely admitted. But somehow the honor that appeared to surround Mr. Wade when in the office of this editor, seemed to desert him very shortly afterward, when he ordered the advertisement to be inserted as it appears in The Gazette today.

We have no disagreement with Mr. Wade or his ambition to become mayor of Rock Falls. We apologize to our readers for publishing this statement today.

We told Mr. Wade that we would have a statement to the effect of the above. Being what we believe to be a "truthful" man, we are keeping our word to him. We may be a lot of things all wrapped up into one package, but we are not a "liar"—we kept our word.

What Mr. Wade is, perhaps is best known to himself alone, but he "lies" when he says he was refused space in The Daily Gazette—and from "lies" come "liars."

Preston F. Grandon,
Editor Daily Gazette.

---

### WEBSTER'S DEFINITION OF "LIAR."

LIAR—A person who knowingly utters falsehood.

In the instance referred to above Mr. Wade is "tops"—his batting average is ONE THOUSAND PERCENT!

that as the result of said libelous publication plaintiff was greatly damaged in his credit, reputation and standing; and that his campaign for mayor was thereby injured and impeded, resulting in his defeat. No special damages are alleged.

██ Plaintiff contends that the publication in The Daily Gazette of the article set out in the complaint constitutes a libel per se. According to the definition applied in both civil actions and criminal prosecutions at the time the publication in question was

made, a libel is a malicious defamation expressed either by printing, or by signs or pictures, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue or reputation or publish the natural defects of one who is alive, and thereby to expose him to public hatred, contempt, ridicule, or financial injury. (Ill Rev Stats 1961, c 38, § 402.) If the words of a publication are clearly defamatory on their face, are unambiguous and incapable of an innocent meaning, the court will declare them to be libelous as a matter of law. Such words are said to be libel per se. In libel actions where the defamatory words are libelous per se, it is unnecessary to allege or prove special damages as both malice and damages are presumed. Cowper v. Vannier, 20 Ill App2d 499, 156 NE2d 761; Cook v. East Shore Newspapers, Inc., 327 Ill App 559, 64 NE2d 751.

 There is no general rule defining what words are defamatory and what are not. Each case depends upon its own facts. In 53 CJS Libel and Slander, sec 9, it is said:

"In determining whether or not particular language is defamatory, it is impossible to lay down any definite rule which will govern in all cases; but the language used and the particular facts and circumstances of each case must control."

Where it is charged that a publication is libelous per se the article as a whole must be considered. In Dilling v. Illinois Publishing & Printing Co., 340 Ill App 303, 91 NE2d 635, such rule is stated as follows:

"The article is to be understood according to the natural and obvious meaning of the words used, taking into consideration the article as a whole and including headlines (Cook v. East Shore Newspapers, Inc., 327 Ill App 559), and where the

106

words used have a clear meaning and are free from ambiguity it is a question for the court whether the words are capable of the meaning ascribed by the innuendo (Life Printing & Publishing Co. v. Field, 324 Ill App 254)."

The words employed in an article alleged to be libelous are to be taken in the sense which readers of common and reasonable understanding would ascribe to them, that is, according to their common and ordinarily accepted meaning. Belt v. Tribune Co., 6 Ill App2d 489, 128 NE2d 638. The question is not whether the words are capable of conveying the meaning which a plaintiff attaches to them in his complaint, but whether according to their ordinary meaning they are libelous. Ogren v. Rockford Star Printing Co., 288 Ill 405, 123 NE 587; Lundstrom v. Winnebago Newspapers, Inc., 27 Ill App2d 128, 169 NE2d 369.

In this case the alleged libelous article was identified in its editorial as "An Editorial." It did not appear as a news item and we assume that those who read newspaper editorials are persons of at least average intelligence. We think such persons upon reading the article as a whole would understand that it did not brand the plaintiff as a liar in general terms, and one who was unworthy of belief under any circumstances, but stated that he was untruthful in a particular instance. It recites that a certain statement of plaintiff appearing in his advertisement in the Gazette was a "lie." That the writer of the editorial was accusing plaintiff of being a liar only with respect to a particular statement seems clearly indicated by the fact that such statement is set out in the editorial. No reference is made to any other portion of plaintiff's advertisement or to any other statement made by him. A further indication that the editorial was not designed to maliciously injure plain-

107

tiff's good name and thus bring about his defeat in the election is apparent from the statement therein that The Gazette had no disagreement with plaintiff or his ambition to become mayor. If the editorial was maliciously inspired it would be difficult to account for the obvious care taken by defendants to restrict their charge of untruthfulness to plaintiff's statement that he was denied space in The Daily Gazette. We think a reader would readily understand that the alleged libelous statement was defendants' reply to plaintiff's charge that he had been the victim of unfair treatment at the hands of The Gazette. In such reply defendants stated that in charging defendants with refusing to give him space in The Gazette, plaintiff had lied. We think readers of common understanding would take such a statement to mean only that plaintiff's charge was not true. Taking into consideration the circumstances under which the editorial was published including the fact that plaintiff was waging a political campaign in Rock Falls, we do not think the words used are capable of the meaning ascribed thereto by plaintiff.

We will agree that the word "liar" is not a complimentary name, however, it does not follow that its use is libel per se. While such a term may be regarded as abusive in nature it did not in this case imply that the plaintiff was generally a dishonest person or one who could not be believed under oath. Aside from the reference to plaintiff's advertisement, there are no words in the article capable of being interpreted as charging plaintiff with any crime or doing something disreputable. In such situation it would not seem reasonable to conclude that the words complained of posed any serious threat to plaintiff's reputation. See Roby v. Murphy, 27 Ill App 394; Parker v. Kirkland, 298 Ill App 340, 18 NE2d 709.

 There is present here an additional circumstance which must be considered in determining whether the article in question is libel per se. Plaintiff was a candidate for public office. As such his conduct and actions became subjects upon which the public might freely comment. Where such comments are pertinent to a candidate's qualifications and are not made maliciously, they are not libelous. The article in question pointed out that in a particular public statement the plaintiff had not told the truth. Under such circumstances we think the defendants' comments in the article in question were pertinent to plaintiff's qualifications for the office which he sought.

 Plaintiff argues that the weight of authority supports his contention that defendants' article was libelous per se because it states that plaintiff had lied and thereby qualified as a liar. Quotations from various legal encyclopedias are referred to in his brief but these do no more than recite broad general rules and shed no light upon the question whether there is any recognized distinction between words charging a person with lying in a particular instance and those branding him as a liar generally. Two Illinois cases are cited, namely: Pullman Standard Car Co. v. Local Union No. 2928, 152 F2d 493, and People v. Doss, 384 Ill 400, 51 NE2d 517. In the Pullman case it was held that a publication which falsely charged a corporation for profit with falsifying its earnings was libelous per se on the ground that it tended to prejudice such corporation in the conduct of its business. People v. Doss was a criminal case. The indictment charged defendant with publishing an article in which a state's attorney was accused of malfeasance in office. The court held the matter published to be libelous per se. One of numerous accusations made against the officer

109

was that he was a "lying and deceitful man." In Doss, as distinguished from the case at bar, the libelous words referred to the state's attorney generally. We think neither of the Illinois cases is applicable to the facts of the case at bar. Plaintiff also cites 12 cases from other jurisdictions. An analysis of each will not be undertaken since it would unreasonably extend this opinion to do so. However, the same have been examined and we deem it sufficient to observe that in none did the court deal with the question decisive of this appeal, viz: Must a published statement that a person is a liar in a particular instance be held to be libelous per se regardless of the facts and circumstances surrounding such publication?

For the reasons indicated we are of the opinion that the trial court did not err in sustaining the motion to dismiss the complaint, and accordingly the judgment of the Circuit Court is affirmed.

Affirmed.

ABRAHAMSON, P. J. and MORAN J., concur.