GEORGE DELIS, Plaintiff-Appellant, *v.* VASILIOS SEPSIS, a/k/a William Sepsis, a/k/a Bill Sepsis, a/k/a Vasilios Sypses, Defendant-Appellee.

(No. 56301;

First District—December 4, 1972.

Peter J. Tatooles, of Chicago, for appellant.

Nathan Shefner, and Toulon & Toulon, both of Chicago, for appellee.

Mr. JUSTICE BURKE delivered the opinion of the court:

Plaintiff filed a complaint and later an amended complaint to recover damages allegedly occasioned by defendant writing and publishing a libelous letter. The defendant filed a motion to strike the amended complaint and to dismiss the action, which was sustained, and the plaintiff appeals.

The alleged libelous letter, written entirely in the Greek language, is set forth in the amended complaint. The English translation is also set forth. The letter was circulated in Chicago on November 23, 1970 and was mailed through the United States mails to the persons originating from Piana, Greece, who are in America, "and to a large number of other people in different parts of the United States." The letter was in response to a publication in the newspaper "Atlantis" of August 18, 1970. This publication was signed by G. Delis, who is the plaintiff and Secretary of the New Association of Pianotans in America.

Many of the alleged libelous words are contained in the following paragraph of the letter:

> "The dishonorable Secretary of the New Association of Pianotans attempts through his publication to conceal the entire historical truth of the subject and to shift the blame for his false step and the resulting disgrace of the entire affair to the treachery and wickedness of a few Pianotans. The deluded Secretary and the adviser who is concealing himself behind him, writing and publishing lies, cast elsewhere his responsibilities for the following reasons:"

The letter then states that a bust of Theodoros Kolokotronis was placed in the Square of the Community of Piana and "a considerable sum of money from the Treasury of the Association of Pianotans in America was expended" therefor; and that the plaintiff and his adviser, members of the Piana "Educational Fund" Committee of the Association of Pianotans, "simultaneously placed behind the Bust and at a distance of half a meter, secretively and meticulously and without the cognition of the members of our Association and even without the cognition of the Board of Directors of the Community of Piana, three marble plaques of an area of nine square meters on which they inscribed 18 names as Benefactors, 32 names of Donors, some of whom happened to be residents

of Piana and close relatives of Delis and Co., 12 names in memory of deceased relatives of Delis, etc., 30 names of members of our Association and 7 names of the Executive Committee in Chicago and in Piana, namely in all 100 names on those, from that time, said advertising plaques and for which there were expended for the inscription of the 100 names the sum of $2,500.00 (advertising), that is to say, the above were set apart and were designated 'Benefactors-Donors-In Memory, etc.' And Mr. Delis is asked, are the Benefactors or the Donors self-proclaiming [sic] themselves? "

The letter states that because of "such scandalous and aimless maneuvering" many persons protested the "entire project of the Bust because of the information thereon of this plethora of names" and "after the compilation of positive information and photographs" the Association "deposed the then existing Governing Committee, of which Mr. Delis was a member" and proceeded to elect another Committee, "which decided to detach the plaques from the Bust which (plaques) served the unique purpose of self-advertising. Since then Mr. Delis, assisted by his hidden adviser, in order to satiate his avaricious craving, withdrew from the Association of Pianotans and established a new Association (of Pianotans), fortunately only inducing a very small number of countrymen."

The letter further states that because of the action of plaintiff the Pianotans split into opposing camps; that due to numerous complaints the former Governor of Arcadia, "in the presence of 50 residents, ordered the Secretary there to detach the plaques and to throw them into the Community office"; that although "the fellow countrymen of Piana residing in America erected in their particular native land a School-Church-a Square, etc." it is questioned "what part did Mr. Delis have in those" because they were all done "by the Old Association, since he established a new personally-owned Association since 1969 for the purpose of satiating his egocentricities"; that the "contrivance of Mr. Delis" in accusing the Director of the Prefecture of "exerting pressure upon the Board of the Community to issue a later order for the detachment of the plaques * * * constitutes an outrage, a calumniation and maliciousness, because the Director of the Prefecture, a Government employee, with authority, dignity and good judgment, did not do anything but hierarchically and lawfully perform his duties for the detachment of the plaques and for erasure of a great ugliness, and at no time did he exercise pressure or illegal operation, he merely performed his duty and every other thoughts are fabrications and illusions;" and that plaintiff and the few countrymen around him have "resorted to a Power of Attorney of a Government Council for the cancellation of the last act of

the Board of the Community and of the resultant acceptance of the Prefecture of Arcadia for the retention of the plaques near the Bust and we are now awaiting the decision of the Higher Court, which we will accept calmly."

The plaintiff alleges in his amended complaint that he has been and still is the Secretary of "Piana Association of America, Inc." a non-profit corporation organized May 5, 1969, and that the membership of the Association consists of persons born in, or persons whose ancestors were born in, Piana, Greece; that the defendant, wickedly and maliciously intending to expose the plaintiff to public hatred, contempt, ridicule, aversion and disgrace, and to induce an evil opinion of him in the minds of right thinking persons and to deprive him of their friendly intercourse and society, describes the plaintiff as "dishonorable," which is an imputation on the plaintiff's honesty and integrity and particularly brands him as lacking honesty and integrity and that said word "dishonorable" is libelous *per se* and truly defamatory, depicts plaintiff as "sly, coy and evasive," depicts plaintiff as "deluded, deceptive and possessing a disordered state of mind" and accuses plaintiff of "being a deliberate liar and distorter of truths."

Plaintiff alleges that he is entirely innocent of any of the defamatory matters imputed to him by the defendant. Plaintiff further alleges that by reason of the above described willful, wanton, evil, malicious, libelous and defamatory publication by the defendant, the health of the plaintiff has been impaired, ruined, damaged, injured, deteriorated, spoiled and marred. Plaintiff further alleges that malice is the gist of the action and prays for judgment against the defendant in the sum of $100,000 as compensatory damages and the additional sum of $150,000 as exemplary or punitive damages.

■■ Although the plaintiff alleges that the words "dishonorable," "deluded," "liar" and the other alleged disparaging statements made by the defendant in his letter of November 23, 1970, were made for the purpose of exposing the plaintiff to "public hatred, contempt, ridicule, aversion and disgrace and to induce an evil opinion of the plaintiff in the minds of right thinking persons and to deprive him of their friendly intercourse and society," the plaintiff does not allege that the facts set forth in the letter are untrue. In the absence of such an allegation, it will be presumed that the said facts are true. Truth is a defense to an action of libel. *Mitchell v. Peoria Journal-Star, Inc.* (1966), 76 Ill.App.2d 154, 162, 221 N.E.2d 516.

■■ Plaintiff contends that the alleged disparaging words and remarks used by defendant in his letter are libelous *per se*. The words and remarks were made in connection with the particular facts pertaining to the

erection of a bust of Theodoros Kolokotronis in the Piana Square, the erection of the plaques in close proximity thereto, the subsequent ouster of plaintiff from the Association of Pianotans and the subsequent organization by the plaintiff and others of the Piana Association of America, Inc. Persons who would read the letter as a whole would understand that it did not brand the plaintiff as a "liar," or a "dishonorable secretary," or "deluded" in general terms, or one who was unworthy of belief under any circumstances, but would base the alleged disparaging words and remarks on the facts set forth in the letter of November 23, 1970. That the plaintiff was not injured and harmed in his good name and reputation is evidenced by the fact that he was elected and still is the Secretary of Piana Association of America, Inc.

In *Wade v. Sterling Gazette Co.* (1965), 56 Ill.App.2d 101, 205 N.E.2d 44, an editorial in The Daily Gazette called the plaintiff a "liar." The court held that its use was not libel *per se,* saying (56 Ill.App.2d 108):

> "We will agree that the word 'liar' is not a complimentary name, however, it does not follow that its use is libel per se. While such a term may be regarded as abusive in nature it did not in this case imply that the plaintiff was generally a dishonest person or one who could not be believed under oath. Aside from the reference to plaintiff's advertisement, there are no words in the article capable of being interpreted as charging plaintiff with any crime or doing something disreputable. In such situation it would not seem reasonable to conclude that the words complained of posed any serious threat to plaintiff's reputation. See Roby v. Murphy, 27 Ill.App. 394; Parker v. Kirkland, 298 Ill.App. 340, 18 N.E.2d 709."

In *Van Tuil v. Carroll* (1972), 3 Ill.App.3d 869, 279 N.E.2d 361, the court, on defendant's motion to dismiss the complaint for libelous defamation of plaintiff's character, held that the words allegedly libelous were capable of being read innocently and, therefore, the complaint did not state a cause of action.

In *Skolnick v. Nudelman* (1968), 95 Ill.App.2d 293, 237 N.E.2d 804, the court dismissed the third amended complaint for libel and held (95 Ill.App.2d 305) that terms "nut," "mishuginer" and "screwball" do not connote opprobrium or reprehensibility; and that while they may be vituperative and abusive, they amount to no more than "name-calling" and are not defamatory.

In the case at bar, the words "liar," "dishonorable" and the other allegedly disparaging remarks used by defendant in his letter of November 23, 1970, are capable of being read innocently. They did not imply that the plaintiff was generally a dishonest person or one who could not

be believed under oath. It would not seem reasonable to conclude that the words complained of posed any serious threat to plaintiff's reputation. Under the facts and circumstances set forth in the record, it appears that the words "liar," "dishonorable" and the other allegedly disparaging remarks are not libelous *per se*. The words are no more than "name-calling" and are not libelous.

Plaintiff argues that the motion to strike the amended complaint and to dismiss the action admits all well pleaded facts. The law is well settled that a motion to dismiss admits only those facts which are well pleaded, but does not admit conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which the conclusions are based (*Grabavoy v. Wilson* (1967), 87 Ill.App.2d 193, 200, 230 N.E. 2d 581; *Bontkowski v. Chicago Sun-Times* (1969) 115 Ill.App.2d 229, 232, 252 N.E.2d 689.) Admitting the facts alleged does not, however, admit the conclusion that the words quoted were libelous. Plaintiff's allegations in the amended complaint to the effect that the words "dishonorable," "sly, coy and evasive," "deluded" and "being a deliberate liar and distorter of truths" and the other allegedly disparaging statements are libelous, are mere conclusions unsupported by allegations of specific facts upon which the conclusions are based and, therefore, they are not admitted to be libelous by the motion to strike.

Plaintiff also argues that by the trial court's order sustaining the defendant's motion to strike the amended complaint and dismissing the action, he has been denied his constitutional right to trial by jury and the right to have his day in court. It has been demonstrated that it is for the trial court to determine whether the plaintiff has stated a cause of action. (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill.2d 345, 350, 243 N.E.2d 217.) The trial court determines whether the amended complaint stated a cause of action. If it does not, the plaintiff is not entitled to a jury trial. (*Skolnick v. Nudelman* (1966), 71 Ill.App.2d 424, 427-428, 218 N.E.2d 775.) Further, the record filed in this court does not show that a jury demand was filed by the plaintiff in the trial court. It is elementary that this court will not review any issue not raised by the record. *1616 Bldg. Corp. v. Rubinson* (1965), 64 Ill.App.2d 114, 212 N.E.2d 338; *Oppenheimer v. U.S. Carbon & Ribbon Mfg. Co.* (1963), 43 Ill.App.2d 451, 193 N.E.2d 868.

Plaintiff also argues that the allegations of damages to plaintiff's good name, reputation, occupation and business constitute sufficient allegations as to special damages. This argument is based on the premise that the amended complaint set forth a cause of action for libel. We have concluded that the words and alleged disparaging remarks were not libelous

and, therefore, plaintiff's argument on special damages need not be considered by the court.

The language quoted in the cases cited by the plaintiff are not applicable to the facts in the case at bar; they pertain to the general law of libel and libel *per se*. The plaintiff does not demonstrate how these general principles of law prove that the words "dishonorable," "liar" and the other allegedly disparaging remarks used in the defendant's letter are libelous *per se*.

The trial court properly sustained the motion to dismiss.

Judgment affirmed.

GOLDBERG, P. J., and EGAN, J., concur.