RICHARD M. BRITTON, Plaintiff-Appellant, *v.* THE WINFIELD PUBLIC LIBRARY *et al.*, Defendants-Appellees.

Second District    No. 81-61

Opinion filed November 9, 1981.

UNVERZAGT, J., dissenting.

David S. Miller and Michael S. Britton, both of Chicago, for appellant.

Gerald J. Brooks and Heidi H. Katz, both of Fawell, James and Brooks, of Naperville, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Plaintiff, the former Winfield village administrator, filed a complaint against the defendants on May 20, 1980, for libel *per se* as the result of the publication on November 21, 1979, of the following letter composed and approved by the defendants and addressed to local newspapers and members of the village and library boards:

"In the November 14, 1979 issue of *The Examiner* there appeared an article in which it was stated 'Winfield Village officials have expressed some concern about the upcoming November 17 referendum in which voters will decide on the issuance of public library building bonds'.

Although we respect and expect that our elected Village officials be concerned with any project involving our Village and increases in taxes, we expected and would have appreciated having these concerns expressed to the Winfield Library Board of Directors. This would have allowed us to satisfy any questions.

The Library Board, along with its attorney, architect and financial consultant, attended several meetings of the Board of Trustees in order to answer questions. None of the concerns outlined in the November 14, 1979 article were raised by any of the trustees at these meetings.

We as a Board do not feel we were treated fairly by your expressing these concerns without giving us a chance to answer before the referendum was held.

In checking on the article, we found that Mr. R. Britton, Village Administrator, called the press release into the *Examiner* on Monday, November 12. This type of cheap and dishonest government is not needed nor should be allowed in the Village of Winfield.

Mr. Britton was so concerned about the future of the Village, in which he does not reside nor pay taxes, that he made himself a spokesman for the other Village officials who are all residents and tax payers, and resorted to 'dirty tricks'.

Therefore, the Winfield Library Board of Directors asks that Mr. Britton be reprimanded, instructed as to proper procedures in dealing with the press and publicly apologize so that honest and upright government can come back to our Village.

Passed by motion, Winfield Library Board of Directors November 21, 1979."

Plaintiff's complaint alleged, in substance, that the words concerning plaintiff in the letter were false, malicious and defamatory, imputing plaintiff's want of skill and integrity, dishonesty, collusion and conspiracy to violate statutes and ordinances for personal gain; were published concerning plaintiff in his capacity as a public official, and falsely and maliciously impugned plaintiff's ability and fitness to serve the community in a position of trust; charged plaintiff with dishonest, illegal conduct, and with fraudulent and unethical practices, and with collusion

and conspiracy to defraud the taxpayers and residents of the Village of Winfield.

It further alleged that defendants made such statements knowing that they were false; that the statements prejudiced plaintiff and injured his reputation for honesty, integrity and ability in the performance of his duties as a public official and the conduct of his business as a village administrator; and that they subjected plaintiff in his capacity as a public official and in his capacity as a village administrator to public hatred, contempt, ridicule and distrust.

The defendants' amended motion to dismiss with prejudice, filed pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 45), raised three legal defenses to the complaint: failure to allege actual malice, the rule of innocent construction, and privilege and fair comment. The court granted the motion, basing the decision on the rule of innocent construction, and plaintiff's timely filed notice of appeal limited the issue to the court's finding that the letter was not actionable because it came within that rule.

■■ Essentially the rule of innocent construction provides that an allegedly defamatory writing must be read as a whole and the words given their natural and obvious meaning, and that all words which could be libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law. *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 442.

■■ Certain classifications of words have been found to be so naturally and obviously hurtful that damage is presumed and no allegations or proof of special damages are necessary. Words falling within these four classes are considered to be libel *per se*; (1) words which impute the commission of a criminal offense; (2) words which impute infection with a communicable disease which, if true, would exclude one from society; (3) words which impute the inability to perform or want of integrity in the discharge of duties of office or employment; (4) words which prejudice a particular party in his profession or trade. *Richardson v. Dunbar* (1981), 95 Ill. App. 3d 254, 259; *Coursey v. Greater Niles Township Publishing Corp.* (1967), 82 Ill. App. 2d 76, 81-82, *aff'd* (1968), 40 Ill. 2d 257.

In its letter of December 15, 1980, directing that an order dismissing the complaint be drafted and submitted for its approval, the trial court found that: "Defendants' letter does not impute the commission of any crime to plaintiff but clearly relates to the discharge of the duties of his office as Village Administrator and to his profession." The court then found that: "Read as a whole, however, defendants' letter complains only of a news release shortly before a library referendum to which the library board had no opportunity to respond." Thus, the trial court held that

"defendants' letter is not actionable because it comes within the rule of innocent construction."

■■ We agree that the defendants' words, read in the context of the entire letter and surrounding circumstances, must be declared nonactionable under that rule. Although harsh and uncomplimentary, these words amount to criticism of the plaintiff's conduct in a particular instance and not a personal attack on the plaintiff's honesty or character in general. Earlier cases have held nonactionable similar attacks that were, if anything, more easily read as defamatory and dismissed suits for libel *per se* based on these attacks.

Read in context, the defendants' accusations of "cheap and dishonest government" and "dirty tricks," and the charges that the plaintiff did not follow "proper procedures" or practice "honest and upright government" are simply harsh criticisms of the plaintiff's conduct in this particular instance rather than attacks on his honesty or character in general. This case thus appears nearly on "all fours" with two earlier cases, in each of which the appellate court upheld a motion to dismiss a suit for libel *per se* that was based on a publication calling the plaintiff a "liar" in connection with a specific incident.

In *Wade v. Sterling Gazette Co.* (1965), 56 Ill. App. 2d 101, the plaintiff, a candidate for mayor, published an advertisement in the defendant's newspaper charging that the defendant had denied him the right to reply to assertions made by one of the newspaper's writers. The defendant retaliated by running an editorial entitled "NO WORD TAKES PLACE OF 'LIAR'." which stated that the plaintiff's charge was "a 'lie' of the common garden variety, which means that [plaintiff], in the parlance of the street, is an 'unadulterated liar.' " (56 Ill. App. 2d 101, 104.) The court defined libel *per se* as words that are "clearly defamatory on their face, * * * unambiguous and incapable of an innocent meaning" (56 Ill. App. 2d 101, 106), and held defendant's editorial nonactionable as a matter of law. The court stressed that the editorial "did not brand the plaintiff as a liar in general terms, and one who was unworthy of belief under any circumstances, but stated that he was untruthful in a particular instance. * * * [T]he word 'liar' is not a complimentary name, however, it does not follow that its use is libel per se." (56 Ill. App. 2d 101, 108.) While the court's exact rationale is somewhat unclear, it upheld a motion to dismiss a suit for libel *per se* involving a publication that, if anything, was more personally insulting to the plaintiff than the one at issue here.

The innocent construction rule was explicitly involved in *Delis v. Sepsis* (1972), 9 Ill. App. 3d 217. There the defendant was sued for libel *per se* for writing a letter that accused the plaintiff of sabotaging the installation of a statue in a city square by surrounding the statue with

self-promoting "advertising plaques," resulting in the division of the ethnic organization of which plaintiff was secretary into warring camps. The defendant's letter stated in part that

" 'The dishonorable Secretary of the New Association of Pianotans attempts through his publication to conceal the entire historical truth of the subject and to shift the blame for his false step and the resulting disgrace of the entire affair to the treachery and wickedness of a few Pianotans. The deluded Secretary and the adviser who is concealing himself behind him, writing and publishing lies, cast elsewhere his responsibilities * * *.' " 9 Ill. App. 3d 217, 218.

The letter further described the plaintiff as " 'sly, coy and evasive,' * * * 'deluded, deceptive and possessing a disordered state of mind,' and 'being a deliberate liar and distorter of truths' " (9 Ill. App. 3d 217, 220); it further accused him of " 'scandalous and aimless maneuvering' " in order to " 'satiate his avaricious craving' " and " 'satiat[e] his egocentricities'." 9 Ill. App. 3d 217, 219.

The court held this torrent of abuse nonactionable, explaining that

"* * * the words 'liar,' 'dishonorable' and the other allegedly disparaging remarks used by defendant in his letter of November 23, 1970, are capable of being read innocently. They did not imply that the plaintiff was generally a dishonest person or one who could not be believed under oath. It would not seem reasonable to conclude that the words complained of posed any serious threat to plaintiff's reputation. Under the facts and circumstances set forth in the record, it appears that the words 'liar,' 'dishonorable' and the other allegedly disparaging remarks are not libelous *per se*. The words are no more than 'name-calling' and are not libelous." 9 Ill. App. 3d 217, 221-22.

The writing here also concentrates all of its allegedly defamatory words on the plaintiff's conduct in connection with one incident. There is actually less hint of a generalized character attack here than in *Wade* or *Delis*; there, each defendant called the plaintiff himself a "liar," whereas here the defendants' harsh adjectives modify the plaintiff's action, *e.g.*, "cheap and dishonest government," "dirty tricks," and "[im]proper procedures." Indeed, the defendants' suggestion that a reprimand and public apology would enable "honest and upright government" to come back to their village implies that they believed the plaintiff not to be generally irresponsible or untruthful.

The defendants' writing, when read in context, emerges as a harsh criticism of plaintiff's actions in a single case rather than an assault on his character in general. As such, it would appear to be indistinguishable from the writings involved in *Wade* and *Delis*.

The dissent suggests that as an importation of misconduct in office, the letter falls within two categories of libel *per se*. But words capable of innocent construction have been held nonactionable even where plaintiffs have alleged harm to their profession or trade or an importation of want of integrity in the discharge of duties of office. *Wade* is an example of the first type of allegation; *Delis* of the second. (See also *Krass v. Froio* (1975), 24 Ill. App. 3d 924; *Valentine v. North American Company for Life and Health Insurance* (1973), 16 Ill. App. 3d 277; *Lundstrom v. Winnebago Newspapers, Inc.* (1960), 27 Ill. App. 2d 128.) The issue of innocent construction is antecedent to that of libel *per se*; that latter issue need be addressed only if it is first determined that the writing cannot be innocently construed. See also *Delis v. Sepsis* (1972), 9 Ill. App. 3d 217, 219-20.

For these reasons, the judgment of the circuit court of Du Page County dismissing the plaintiff's complaint is affirmed.

Judgment affirmed.

LINDBERG, J., concurs.

Mr. JUSTICE UNVERZAGT, dissenting:

I cannot agree that the letter, read as a whole, is capable of an innocent construction. The library board's letter does not only complain of lack of opportunity to respond to the village board's concerns, it accuses the village administrator of "cheap and dishonest government" because he called in a press release setting forth the village board's concerns about the impending referendum. It charges the plaintiff with "[making] himself a spokesman for the other village officials who are all residents and tax payers [of the village]" and of resorting to "dirty tricks" because he was "so concerned about the future of the Village, in which he does not reside nor pay taxes ° ° °." The fourth paragraph of the letter in question admits in effect that the village board did have concerns. Notwithstanding that, however, the library board's letter requested the plaintiff be reprimanded for having called in that information to the press—ostensibly an act not within the realm of "proper procedures"— and that he publicly apologize, thus restoring "honest and upright government" to the village.

When read in the context of the first four paragraphs of the letter which are directed against the village board members, the remaining paragraphs of and concerning the plaintiff give rise to the factual inferences that he acted clandestinely without the knowledge and/or authority of the village board, that he failed to observe appropriate public relations procedures, that he was guilty of taking a "cheap shot" in order to defeat the referendum, and that he wrongfully presumed to speak for

the officials of a village in which he had no financial stake or abiding interest. Such inferences smack of untoward aggressiveness and personal power unbecoming a village administrator who is hired to implement, not initiate. The suggestion flows from the letter as a whole that, although the village board had concerns, the village administrator should not have made them public knowledge because they were not formulated by the village board in a timely enough fashion to suit the defendants. Further, the letter imputes that the responsibility for making the concerns a matter of public information was totally the dishonest and underhanded doing of the plaintiff. Such an imputation is highly prejudicial to the perceived role of a professional municipal administrator and, as such, falls within the last two of the four categories of libel *per se*, noted in the majority opinion. Although the parties there were aligned differently than here, it was held in *Springer v. Harwig* (1981), 94 Ill. App. 3d 281, that a village administrator has an absolute privilege within the scope of his duties to discuss matters that are legitimately related to the official responsibilities of that office. Further, I believe most citizens commonly regard the village administrator as the spokesperson for their elected officials. The imputation in the letter that the administrator spoke without authority in the instant case severely, if not irreparably, damaged one of his most essential management tools: his credibility. Application of the innocent construction rule in this case would only add more metal to a rule that is practically iron-clad now.[1]

Upon review of an order dismissing a complaint, we must determine whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted. A complaint must not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under the pleadings which would entitle the plaintiff to relief. (*Hoffman v. Allstate Insurance Co.* (1980), 85 Ill. App. 3d 631, 633; *Kenneke v. First National Bank* (1978), 65 Ill. App. 3d 10.) I cannot agree with the trial court that the letter is capable of an innocent construction or that it therefore clearly appears that no set of facts could be proved which would entitle the plaintiff to relief. I agree, though, as the trial court found, that the arguments as to privilege and fair comment cannot be determined as a matter of law on the pleadings. Because the trial court dismissed the complaint on the basis of innocent construction, it made no determination of the sufficiency of the "actual malice" allegation which is required here since plaintiff admits he is a public official (see *New York Times Company v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710), nor have defendants presented any argument here as to

---

[1] See Polelle, *The Guilt of the "Innocent Construction Rule" in Illinois Defamation Law,* 1 N. Ill. U.L. Rev. 181 (1981).

that issue. I believe that actual malice has been sufficiently alleged in the complaint when considered in light of the factual inferences arising from the face of the allegedly libelous statements in the context of the letter itself which was attached to the complaint in full as an exhibit. *Coursey v. Greater Niles Township Publishing Corp.* (1968), 40 Ill. 2d 257; *Colson v. Stieg* (1980), 86 Ill. App. 3d 993.

I therefore am of the opinion that the judgment of the circuit court of Du Page County should be reversed and the cause remanded for further proceedings.