JERRY COSTELLO, Plaintiff-Appellant, *v.* CAPITAL CITIES MEDIA, INC., *et al.*, Defendants-Appellees.

Fifth District   No. 81—301

Opinion filed December 21, 1982.—Rehearing denied January 18, 1983.

Amiel Cueto, of Belleville, for appellant.

Robert B. Hoemeke and John M. Hessel, both of Lewis, Rice, Tucker, Allen and Chubb, of St. Louis, Missouri, for appellees.

JUSTICE WELCH delivered the opinion of the court: ·

This case arose as an action in the circuit court of St. Clair County to recover damages for the publication of an alleged libel. The plaintiff, chairman of the St. Clair County Board, brought suit against Capital Cities Media, Inc., publisher of the Belleville News Democrat and Richard N. Hargraves, an editorial writer for that newspaper. The trial court sustained a motion to dismiss the complaint and entered judgment for the defendants. Plaintiff has appealed.

On December 31, 1980, the following editorial appeared in the Belleville News Democrat:

"COSTELLO BLEW HIS FIRST CHANCE

Jerry Costello lied to us.

There's no nicer way to put it; he simply lied.

And, when he lied to us, he lied to you.

He said he was going to be a tough county board chairman, especially when board members wanted to spend taxpayers' money.

He said he would militantly oppose the implementation of any new tax without first seeking the voters' approval through a referendum.

He said he would lead the County Board down the proper paths, protecting the rights of the taxpayers.

Well, he lied.

He didn't do any of those things Monday night, thereby breaking his most sacred campaign promise at his very first meeting.

The County Board had an opportunity to conduct a binding referendum, asking you if you wanted to pay a new sales tax to support the Bi-State bus system. That's the very thing Costello had pledged he would do. He had promised, in the strongest possible terms, that he would let the voters decide.

But when the time came to make a decision, he was up there sitting on his gavel.

Some leader!

You couldn't tell him from any other politician in the bunch. He did absolutely nothing to protect your interests.

To say we're disappointed is too mild; we're irate. We supported Costello's election because of what he said to us. We told you what he said and how we thought he was different from the run-of-the-mill, Touchette-dominated Democrats of the past.

Now we wonder if we didn't lie to you.

Maybe Costello isn't different.

Maybe Costello didn't mean any of the things he said.

Maybe his opponent, Republican Larry Reineck, was right when he said Jerry Costello was nothing more than another patronage-oriented political hack.

How are we supposed to tell otherwise?

Jerry Costello asked for a chance to prove himself and, in his very first meeting, he blew it.

Just think, we've got two more years of the Costello brand of lying leadership.

Doesn't that thrill you?

-RICHARD N. HARGRAVES."

On January 6, 1981, the plaintiff filed a complaint alleging that the corporation and the editorial writer had libeled him.

The sole issue on appeal is whether the complaint states a cause of action. Plaintiff's complaint alleges substantially that the editorial contained one or more false statements concerning the plaintiff, which the defendants knew were false or the truth of which the defendants recklessly disregarded. Seven particular allegedly false statements are set forth in plaintiff's petition: "Jerry Costello lied to us"; "There's no nicer way to put it, he simply lied"; "And when he lied to us, he lied to you"; "Well he lied"; "But when the time came to make a decision, he was up there sitting on his gavel"; "He did absolutely nothing to protect your interests"; and "Just think, we've got two more years of the Costello brand of lying leadership." Plaintiff alleges that these statements held him up to disrepute, public scorn, contempt, hatred and ridicule. He asserts that his personal and professional reputation were injured, as well as his reputation for truth, veracity, honesty and integrity. Plaintiff also asserts that these injuries caused great mental anguish and emotional distress.

Plaintiff acknowledges in his brief that since special damages have not been pleaded, the editorial must be libelous *per se* in order to state a claim for libel. Establishing libel *per se* requires a serious charge of incapacity or misconduct in words so obviously and actually hurtful that proof of their injurious character is dispensed with. (*Makis v. Area Publications Corp.* (1979), 77 Ill. App. 3d 452, 456, 395 N.E.2d 1185.) The four categories of words constituting libel *per se* are: (1) those imputing the commission of a crime, (2) those imputing infection with a loathsome disease, (3) those imputing unfitness or want of integrity in performing the duties of an office or employment, and (4) those imputing lack of ability in a person's business, trade or profession. *Fried v. Jacobson* (1982), 107 Ill. App. 3d 780, 438 N.E.2d 495, *appeal allowed*, Sup. Ct. Docket No. 57279; *Makis v. Area Publi-*

*cations Corp.*

Plaintiff contends that the editorial in question imputes an ability to perform his duties in office or a want of integrity in performing his duties. Defendants respond that the editorial does not impute any want of integrity or ability and that under the rule of innocent construction followed in Illinois, dismissal of the complaint is required. The traditional rule states that a publication must be read as a whole, the words must be given their natural and obvious meaning and words capable of being read innocently must be so read and declared nonactionable as a matter of law. *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105; *Fried v. Jacobson.*

In the instant case, the defendants assert that their words, although harsh and uncomplimentary, amounted only to criticism of the plaintiff's conduct in a particular instance. They claim that there was no personal attack on the plaintiff's honesty or character in general, despite the repeated references to "lying." *Delis v. Sepsis* (1972), 9 Ill. App. 3d 217, 292 N.E.2d 138; *Wade v. Sterling Gazette Co.* (1965), 56 Ill. App. 2d 101, 205 N.E.2d 44.

The alleged libel in *Wade v. Sterling Gazette Co.* was discussed at length in the defendants' trial and appellate briefs. A portion of the editorial alleged to be libelous *per se* in that case is reproduced below:

"NO WORD TAKES PLACE

OF 'LIAR'!

(An Editorial)

In an advertisement appearing in today's issue of The Daily Gazette, inserted by Cecil P. Wade, candidate for mayor of Rock Falls, appears this statement:

'After reading these articles, I endeavored to obtain equal space and equal coverage in this newspaper to answer and refute the assertions made by the writer. My request for fair play fell upon dead ears and the only conclusion that can be drawn is that only the present mayor is afforded such privileges and opportunities.'

That statement is a 'lie' of the common garden variety, which means that the person accepting the responsibility for that statement, Mr. Cecil P. Wade, in the parlance of the street, is an 'unadulterated liar.'

We dislike using the word 'liar'; it is not dignified, it is unbecoming of either a reputable newspaper or its publisher; unfortunately it lowers the author of this editorial to the degraded level of the advertiser.

\* \* \*

What Mr. Wade is, perhaps is best known to himself alone, but he 'lies' when he says he was refused space in the Daily Gazette -- and from 'lies' come 'liars.'

\* \* \*

## WEBSTER'S DEFINITION OF 'LIAR.'

LIAR—A person who knowingly utters falsehood.

In the instance referred to above Mr. Wade is 'tops'—his batting average is ONE THOUSAND PERCENT!'' *Wade v. Sterling Gazette Co.* (1965), 56 Ill. App. 2d 101, 105, 205 N.E.2d 44, 46-47.

The reviewing court in *Wade v. Sterling Gazette Co.* observed that the alleged libel was identified as an editorial and did not brand the plaintiff as one unworthy of belief under any circumstances, but merely stated he had been untruthful in one particular instance. The *Wade* court further took into consideration the circumstances surrounding the editorial, including the fact that the plaintiff was a political candidate at the time. The court stated that the word "liar" is far from complimentary, but held that abusiveness alone does not make a publication libel *per se* and therefore, the editorial posed no serious threat to the plaintiff's reputation. Accordingly, the trial court's dismissal of the libel action was affirmed.

After *Wade*, a reviewing court in *Delis v. Sepsis* (1972), 9 Ill. App. 3d 217, 292 N.E.2d 138, reached a similar result. The defendant in that case was sued after he wrote a letter attacking the plaintiff for his activities as secretary of an organization of persons of Greek descent. The letter also stated that the plaintiff was "sly, coy and evasive" and "deluded, deceptive and possessing a disordered state of mind" and "a deliberate liar and distorter of truths." (*Delis v. Sepsis* (1972), 9 Ill. App. 3d 217, 220, 292 N.E.2d 138, 141.) Despite this abusive language, the appellate court held that the letter was capable of being read innocently. The court stated that the charge did not imply that the plaintiff was generally dishonest or one who could not be believed under oath. Therefore, the words were held to be mere namecalling and not libel *per se*.

Although not mentioned by the parties, *Britton v. Winfield Public Library*, (1981), 101 Ill. App. 3d 546, 428 N.E.2d 650, also involved charges of dishonesty. In *Britton* a library's board of directors was

sued for libel after writing a letter to local newspapers attacking the actions of the Winfield village administrator. The village administrator was accused of "cheap and dishonest government" and "dirty tricks"; the defendants sought a reprimand and public apology in order to bring "honest and upright" government back to their village. (*Britton v. Winfield Public Library* (1981), 101 Ill. App. 3d 546, 547, 428 N.E.2d 650, 651.) On appeal, the *Britton* court found that the editorial in *Wade* and the letter in *Delis* were indistinguishable from the library board's letter in that case. The court stated that all three cases involved "harsh criticism of plaintiff's actions in a single case rather than an assault on his character in general." *Britton v. Winfield Public Library* (1981), 101 Ill. App. 3d 546, 550, 428 N.E.2d 650, 653.

■ Like the instant case, *Wade, Delis,* and *Britton,* all involved charges of dishonesty. Nonetheless, we hold that these cases are factually distinguishable from the case at bar. As the plaintiff points out, the editorial in the instant case repeatedly attacked him as a liar and also included an explicit reference to "two more years of the Costello brand of lying leadership." The language of the editorial makes it quite apparent that it was an actionable assault on the plaintiff's character in general, not mere criticism of his conduct in a particular instance. Accordingly, we find that the editorial constituted libel *per se* because it imputed to the plaintiff an inability to perform his duties and a want of integrity or lack of honesty in performing the duties of his office.

■ Moreover, the Illinois Supreme Court recently clarified the application of the innocent construction rule in *Chapski v. Copley Press* (1982), 92 Ill. 2d 344. In *Chapski,* the court modified the longstanding doctrine relied on by defendants in the case at bar, and followed in *Wade, Delis* and *Britton.* The traditional rule was criticized by the court because it allowed trial judges to dismiss cases without adequate review if there was any way the alleged libel could be read innocently. The *Chapski* opinion stated that "courts generally strain to find unnatural but possibly innocent meanings of words where such a construction is clearly unreasonable and a defamatory meaning is far more probable." (*Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 350-51.) The supreme court went on to state that the common misapplication of the innocent construction rule is especially improper since, by its own terms, the holding of *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 442, 181 N.E.2d 105, 108, requires that words be given their "natural and obvious meaning." *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 351.

The rule, as modified, states that "a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*." (*Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352.) Although *Chapski* allows trial judges to continue to make a preliminary determination whether a statement may reasonably be innocently construed, contorted interpretations of language so that it might be seen as innocent are now precluded. The court stressed that this modified rule would serve to protect both the individual's interest in vindicating his good name and reputation as well as first amendment interests. *Chapski v. Copley Press.*

Since the editorial in the instant case repeatedly attacks the plaintiff's honesty and makes reference to "two more years of the Costello brand of lying leadership," we feel the *Chapski* decision does not allow us to consider this language innocent of libelous content as a matter of law. To do so would require us to strain to find a possible, but unnatural, innocent meaning, when a defamatory meaning is far more probable. *Chapski v. Copley Press* (1982), 92 Ill. 2d 344.

■ The defendants also assert in their brief that the allegations of dishonesty were privileged as a matter of law as a constitutionally protected expression of opinion. (*Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 339-40, 41 L. Ed. 2d 789, 805, 94 S. Ct. 2997, 3006-07.) Although the boundary between fact and opinion is not a precise one (*Catalano v. Pechous* (1978), 69 Ill. App. 3d 797, 808, 387 N.E.2d 714, 723, *aff'd* (1980), 83 Ill. 2d 146, 419 N.E.2d 350), in the case at bar, the newspaper repeatedly stated that the plaintiff lied to its editors and to his constituents. The newspaper stated that the plaintiff had firmly promised that the county board would conduct a binding referendum on a new sales tax to support the local bus system and then refused to do so at his very first meeting. As a result, the newspaper concluded that the plaintiff had deliberately lied and was therefore "nothing more than another patronage-oriented political hack."

In *Buckley v. Littell* (2d Cir. 1976), 539 F.2d 882, a journalist brought an action for libel against the author of a book. Although the court held the terms "fascist," "fellow traveler" and "radical right" to be constitutionally protected opinions, the passage of the book that stated that the journalist had lied about several people was held to be a factual assertion relating to the plaintiff's journalistic integrity. (*Buckley v. Littell* (2d Cir. 1976), 539 F.2d 882, 895-96.) The United States Court of Appeals for the Second Circuit further explained

*Buckley* in *Cianci v. New Times Publishing Co.* (2d Cir. 1980), 639 F.2d 54. The court stated that when an opinion is "something more than a generally derogatory remark but is laden with factual content," the first amendment does not confer absolute immunity, but merely the qualified protection accorded by *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, in cases where the plaintiffs are public figures. (*Cianci v. New Times Publishing Co.* (2d Cir. 1980), 639 F.2d 54, 63.) *Buckley* and *Cianci* stand for the principle that the allegation that a public figure is a "liar" can be seen as a factual assertion unprotected by absolute privilege when the derogatory remark is laden with factual content, as opposed to mere name-calling.

In labelling the plaintiff in the instant case a liar, the newspaper impugned a want of integrity and lack of ability in performing the duties of his office. (*Fried v. Jacobson.*) The allegations were not made in a loose, figurative sense or as mere rhetorical exaggeration. (*Catalano v. Pechous* (1980), 83 Ill. 2d 146, 161, 419 N.E.2d 350, 357.) Rather, while purporting to be expressing an opinion, the newspaper stated that the plaintiff was a dishonest man and a dishonest leader. For the foregoing reasons we find that the defendants made factual statements that the plaintiff deliberately lied for politically motivated reasons. These statements do not warrant protection as constitutional expressions of opinions merely because they happen to be made on a newspaper's editorial page.

■ Finally, we must examine whether the plaintiff's complaint sufficiently alleges actual malice, as required by *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710. The Illinois Supreme Court has stated that since pleadings are to be liberally construed, accomplishing the minimal *New York Times* requirement of alleging that a false statement was made knowingly or in reckless disregard of whether it was true or false can be sufficient to avoid dismissal. (*Colson v. Stieg* (1982), 89 Ill. 2d 205, 433 N.E.2d 246.) In the instant case, the plaintiff alleged that the defendants either knowingly or recklessly printed false statements concerning him. The allegedly libelous statements are set forth in the complaint and the publication itself was incorporated into the complaint by reference. Accordingly, the minimal requirements necessary for alleging actual malice are present in the plaintiff's complaint. (*New York Times Co. v. Sullivan; Colson v. Stieg; Fogus v. Capital Cities Media, Inc.* (1982), 111 Ill. App. 3d 1060.) Further proceedings are required to determine whether actual malice can be established with clear and convincing evidence. Therefore, the trial court's order dismissing the

plaintiff's complaint for failure to state a cause of action must be reversed and this cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

HARRISON, P.J., and JONES, J., concur.