JUSTICE LINN
 

 delivered the opinion of the court:
 

 Plaintiffs, a group of candidates who represented the Concerned Citizens Party (C.C.P.) in a recent municipal election, instituted a libel action in the circuit court of Cook County against defendants, the board of directors of the Hazel Crest Forum, a volunteer, nonpartisan citizens’ group organized to promote fair elections in the village of Hazel Crest, Illinois. The trial court granted defendants’ motion for judgment on the pleadings, whereupon plaintiffs filed a two-count amended complaint, count I charging defendants with libel per se by pleading that the Forum’s published statement had damaged plaintiffs in their profession or calling, and count II adding an allegation of special damages. The trial court dismissed the amended complaint with prejudice.
 

 Plaintiffs now appeal, maintaining that the trial court erred in dismissing their complaint because (1) the challenged statements were libel per se, therefore negating the necessity of pleading special damages, (2) they were statements of fact and therefore not protected under the first amendment, (3) the words used were not susceptible to a nondefamatory interpretation under the innocent construction rule, and (4) the electorate’s right to be protected from malicious falsehoods outweighs the defendants’ right of free speech.
 

 We affirm the decision of the trial court.
 

 Facts
 

 This action arose out of events that occurred during the 1981 village election campaign in Hazel Crest, Illinois. Plaintiffs were candidates slated by the C.C.P., while defendants were officers of the Hazel Crest Forum. The Forum, a nonpartisan, volunteer organization formed with the assistance of the League of Women Voters, encouraged people to run for local office, provided opportunities for candidates to express their views to large gatherings of voters, and obtained pledges from the candidates to conduct fair, honest, and dignified campaigns.
 

 One of the Forum’s major activities was its sponsorship of several “Candidates’ Nights,” public meetings at which voters were given an opportunity to hear the various candidates speak on several issues of local importance. As a condition of participation in any of the Forum-sponsored activities, all candidates, including plaintiffs, signed a “Candidate Fair Campaign Pledge,” which read as follows:
 

 “The purpose of this pledge is to insure that each candidate who participates in the Forum conducts a fair, honest and dignified campaign.
 

 I, [candidate’s name], pledge the following:
 

 1. to address the campaign and all issues objectively and with factual information.
 

 * * *
 

 4. to file a copy of all campaign materials intended for distribution with the Forum Board of Directors prior to distribution.
 

 I pledge to conduct my campaign honestly, and I understand that any violation of this pledge will be made public by the Forum.”
 

 On April 6, 1981, the Forum, in accordance with the closing line of the pledge, distributed the following flier, which contained the language at issue in this case. After summarizing the nonpartisan goals of the Forum and noting the first and fourth conditions of the pledge quoted above, the publication continued,
 

 “On March 25, 1981, at the St. Anne’s Church Forum, Kathleen Witt, incumbent candidate for Trustee, said, ‘We have to keep our community a desirable community for all the people, so that we can draw from the Chicago Metropolitan area a fair representation of the homebuying public, that is, in case you are interested, about 8 white buyers and 2 black buyers.’ (Verbatim transcription from Official Forum Tapes)
 

 The C.C.P. flyer of 4-3-81 states, ‘President Kauchek and Trustee Witt are on record as proposing an 8 to 2 ratio. In practice their suggestion would create a village home buyers quota system allowing 8 whites and 2 minorities out of every 10 home buyers coming into the Village.’
 

 The Forum feels that this statement in the C.C.P. literature is an inaccurate rendition of the statement made, which constitutes a violation of condition #1 of the ‘Pledge.’
 

 On April 4, 1981, the C.C.P. did distribute a flyer to the Residents of Hazel Crest without filing this material in accordance with condition #4 of the Candidates Fair Campaign Practices Pledge.”
 

 Following the election defeat of four of the five named plaintiffs, the C.C.P. filed this suit, alleging in their amended complaint that the Forum committed libel per se by charging plaintiffs with twice violating their oath and thus damaging them in their profession or calling. The trial court agreed with defendants that the Forum flier was not actionable and therefore dismissed the case with prejudice. This appeal followed.
 

 Opinion
 

 I
 

 “An action based on libel per se requires a serious charge of incapacity or misconduct in words so obviously and naturally hurtful that proof of their injurious character is dispensed with.” (Makis v. Area Publications Corp. (1979), 77 Ill. App. 3d 452, 456, 395 N.E.2d 1185, 1188.)' Of the four commonly accepted categories of statements that qualify as libel per se, two are pertinent to this appeal: unfitness or láck of integrity in performing the duties of an office or employment, and lack of ability in a business, trade or profession. (Bruck v. Cincotta (1977), 56 Ill. App. 3d 260, 371 N.E.2d 874.) Plaintiffs’ claim that they were prevented from successfully pursuing their chosen “Profession or calling,” i.e., elective political office, because of the Forum’s allegedly false charges is, apparently, a blend of the two stated categories; because of the Forum’s statements that the C.C.P. candidates twice violated their campaign pledge, the electorate perceived those candidates as people who violate their oaths and therefore as unfit for election to public office.
 

 Charges of dishonesty in some form have been the subject of several suits alleging libel per se. (Britton v. Winfield Public Library (1981) , 101 Ill. App. 3d 546, 428 N.E.2d 650; Delis v. Sepsis (1972), 9 Ill. App. 3d 217, 292 N.E.2d 138; Wade v. Sterling Gazette Co. (1965), 56 Ill. App. 2d 101, 205 N.E.2d 44.) Despite the abusive language at issue, the statements in all three cases were held to be “ ‘harsh criticism of plaintiff’s actions in a single case rather than an assault on his character in general.’ ” (Costello v. Capital Cities Media, Inc. (1982) , 111 Ill. App. 3d 1009, 1014, 445 N.E.2d 13, 17, quoting Brit-ton v. Winfield Public Library (1981), 101 Ill. App. 3d 546, 550, 428 N.E.2d 650, 653.) Such criticism traditionally has been held to be capable of being read innocently and therefore is not libel per se.
 

 In contrast, an editorial predicting “two more years of the Costello brand of lying leadership” from a newly elected county board chairman has been found to be not just criticism of conduct in a particular instance and therefore reasonably capable of innocent construction, but rather an actionable assault on his character, as were words that implied that “ '*** the plaintiff was generally a dishonest person or one who could not be believed under oath. ***’ ” (Delis v. Sepsis (1972), 9 Ill. App. 3d 217, 221, 292 N.E.2d 138, 142, quoting Wade v. Sterling Gazette Co. (1965), 56 Ill. App. 2d 101, 205 N.E.2d 44.) Plaintiffs in the instant case argue that the language in the Forum’s flier is not criticism of their actions in a single instance and therefore capable of innocent construction. Instead, plaintiffs claim that their portrayal as people who could not be believed under oath constitutes the same type of general assault on their characters as that deemed libelous in Costello, Delis, and Wade. We agree, and we therefore initially find the statements that plaintiffs twice violated their oaths to be actionable on grounds of libel per se because they impute to plaintiffs such a basic lack of integrity and honesty that the natural reaction of the electorate would be to find them unfit for office.
 

 II
 

 Our inquiry and analysis do not end here, however. “Libel can claim no talismanic immunity from constitutional limitations. It must be measured by standards that satisfy the First Amendment. The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled by our decisions.” (New York Times v. Sullivan (1964), 376 U.S. 254, 269, 11 L. Ed. 2d 686, 700, 84 S. Ct. 710, 720.) We have a “profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open ***.” (376 U.S. 254, 270, 11 L. Ed. 2d 686, 701, 84 S. Ct. 710, 721.) Candidates for public office, having “thrust themselves to the forefront of particular public controversies *** have voluntarily exposed themselves to increased risk of *** defamatory falsehood ***.” (Gertz v. Robert Welch, Inc. (1974), 418 U.S. 323, 345, 41 L. Ed. 2d 789, 808, 94 S. Ct. 2997, 3010.) “ ‘It is of the utmost consequence that the people should discuss the character and qualifications of candidates for their suffrage. * * * [A]nyone claiming to be defamed by the communication must show actual malice or go remediless. ***’ ” (New York Times v. Sullivan (1964), 376 U.S. 254, 281, 11 L. Ed. 2d 686, 707, 84 S. Ct. 710, 728.) The question thus becomes whether the Forum’s flier forfeits its constitutional protection by the alleged falsity of two of its statements and by its alleged defamation of the candidates of the C.C.P.
 

 Neither factual error nor defamatory content automatically removes the constitutional protection from criticism of official conduct. (New York Times v. Sullivan (1964), 376 U.S. 254, 273, 11 L. Ed. 2d 686, 702, 84 S. Ct. 710, 722.)
 

 “The First Amendment precludes liability based on the utterance of defamatory opinions. As the Supreme Court stated in Gertz v. Welch, ‘Under the First Amendment there is no such thing as a false idea. *** [However,] there is no constitutional value in false statements of fact.’ For any statement to be actionable it must depict false facts in a defamatory light. *** Opinion qua opinion cannot provide the basis for an actionable claim. A cause of action will accrue, however, if a statement implies the existence of undisclosed ‘facts’ which are both false and defamatory.” Ollman v. Evans (D.D.C. 1979), 479 F. Supp. 292, 293.
 

 It is clear from the above holding that an author’s opinion based on disclosed facts will not give raise to a cause of action. Further, even if the stated opinion is based on disclosed facts carefully and narrowly selected to support the opinion, such admittedly “biased” journalism is afforded the same constitutional protection as writing thought of as “balanced.” 479 F. Supp. 292, 294.
 

 In their publication, defendants quoted both the original statement made by the village trustee and plaintiffs’ published interpretation. Defendants’ statement that plaintiffs’ version was an inaccurate paraphrase is clearly pure opinion, as is their conclusion that by publishing the flier containing the paraphrase, plaintiffs violated their fair campaign pledge. Although an opinion implying alleged undisclosed defamatory facts is actionable, all the facts supporting defendants’ opinion are disclosed. We therefore find defendants’ first challenged statement to be nonactionable as a matter of law.
 

 In the second statement labeled by plaintiffs as defamatory, defendants claimed that plaintiffs failed to file a piece of campaign literature prior to distribution and thereby violated the fourth condition of the pledge. While this statement is clearly one of fact, not protected opinion, we find that it, too, is nonactionable as a matter of law.
 

 “[Cjonstitutional guarantees require *** a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with ‘actual malice’ — that is, with knowledge that it was false or with reckless disregard of whether it was false or not.” (New York Times v. Sullivan (1964), 376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710, 726.) This standard, subsequently extended to cover public figures as well as officials (Curtis Publishing Co. v. Butts (1967), 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975), applies to “anything which might touch on an official’s fitness for office ***. Few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation ***.” Garrison v. Louisiana (1964), 379 U.S. 64, 77, 13 L. Ed. 2d 125, 134, 85 S. Ct. 209, 217.
 

 Mere failure to check their own files would not necessarily establish that the Forum knew their publication was false. (New York Times v. Sullivan (1964), 376 U.S. 254, 287, 11 L. Ed. 2d 686, 710, 84 S. Ct. 710, 730.) “[T]he publisher must act with ‘ “high degree of awareness of ... probable falsity.” ’ ” (Gertz v. Robert Welch, Inc. (1974), 418 U.S. 323, 332, 41 L. Ed. 2d 789, 801, 94 S. Ct. 2997, 3003, quoting St. Amant v. Thompson (1968), 390 U.S. 727, 731, 20 L. Ed. 2d 262, 267, 88 S. Ct. 1323, 1325.) Because this case is before us on the pleadings, the allegation of the complaint must be judged against these requirements.
 

 A motion to dismiss admits only well-pleaded facts, not conelusions of law or conclusions of fact unsupported by allegations of specific facts upon which the conclusions are based. (Grabavoy v. Wilson (1967), 87 Ill. App. 2d 193, 230 N.E.2d 581.) The complaint at issue discloses that although plaintiffs asserted that the Forum’s published statement concerning violation of the fourth condition of the signed pledge was untrue and that plaintiffs “were not guilty of such breach or violation,” that assertion was not supported by any specific facts in the complaint; consequently, the motion to.dismiss did not admit the conclusion that the statements were false. Similarly, the motion to dismiss does not admit the existence of actual malice because there were not facts alleged from which malice could be implied or presumed. Without such facts, a simple allegation that defendants did not believe their statements, had no reasonable grounds for believing them, and published them with reckless disregard for the truth does not operate as an admission of malice. 87 Ill. App. 2d 193, 200-01, 230 N.E.2d 581, 584-85.
 

 Accordingly, for the reasons set forth we find the complaint to be insufficient to state a claim on which relief may be granted, and we affirm the trial court’s dismissal of both counts. Our discussion of the constitutional protection afforded political debate also disposes of plaintiffs’ final issue.
 

 Affirmed.
 

 ROMITI, P.J., and JIGANTI, J., concur.