BERNARD ALLEN FRIED, Plaintiff-Appellant, *v.* WALTER JACOBSON *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 80-1793

Opinion filed June 23, 1982.—Rehearing denied August 4, 1982.

Bernard Allen Fried, of Chicago, *pro se* (Robert A. Korenkiewicz, of counsel), for appellant.

Reuben & Proctor, of Chicago (Don H. Reuben, Lawrence Gunnels, and Samuel Fifer, of counsel), for appellees.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Bernard Allen Fried (plaintiff-appellant), an Illinois attorney, was mentioned by name in a series of news reports, broadcast over television station WBBM during the period of February 7, 1977, through February 11, 1977, and on March 28, 1977, and December 20, 1977. He brought this action in the circuit court of Cook County against Columbia Broadcasting System, Inc., WBBM-TV CBS Television Station, a division of Columbia Broadcasting System, Inc., Walter Jacobson, Susan Anderson, and William Kurtis, to recover damages for allegedly defamatory statements, composed, uttered and published by the defendants as part of the serialized news reports. All of the defendants joined in a motion for judgment on the pleadings, which the trial court granted holding (a) that the broadcasts were capable of an innocent construction and are nonactionable as a matter of law, and (b) that the broadcasts do not constitute a libel *per se* of the plaintiff in his capacity as an attorney. From the final judgment for all defendants on the pleadings, Fried appeals.

"An action based upon libel *per se* requires a serious charge of incapacity or misconduct in words so obviously and naturally hurtful that proof of their injurious character is dispensed with." (*Makis v. Area Publications Corp.* (1979), 77 Ill. App. 3d 452, 456, 395 N.E.2d 1185.) There are four categories of words which constitute libel *per se*. They are: (1) those imputing the commission of a crime, (2) those imputing infection with a loathsome disease, (3) those imputing unfitness or want of integrity in performing the duties of an office or employment, and (4) those imputing lack of ability in his business, trade or profession. *Makis v. Area Publications Corp.* (1979), 77 Ill. App. 3d 452, 456; *Bruck v. Cincotta* (1977), 56 Ill. App. 3d 260, 264, 371 N.E.2d 874.

■■ The parties agree that in order to determine whether defendant's statements were libelous, all of the complained of broadcasts should be considered in their entirety. Fried argues that the broadcasts charge him with want of integrity as a lawyer or at the very least lack of capacity. We find neither. Nowhere is there language which expressly evaluates Fried's capacity as a lawyer or his ethics. In this, the instant case is distinguishable from *Colmar v. Greater Niles Township Publishing Corp.* (1957), 13 Ill. App. 2d 267, 272, 141 N.E.2d 652, where the plaintiff was described as facing " 'possible disbarment proceedings for unethical tactics.' " A similar distinction can be drawn with respect to *McGuire v. Jankiewicz* (1972), 8 Ill. App. 3d 319, 290 N.E.2d 675, where defendant told a third party he could not have chosen a worse attorney than plaintiff.

■■ There being no express statement evaluating Fried's abilities or integrity as a lawyer, we proceed to examine the acts alleged to determine if these acts impute to Fried a want of integrity or ability. In making this examination we are guided by the rule of innocent construction which requires that a publication be read as a whole, that words be given their natural and obvious meaning, and that words allegedly libelous that are capable of being read innocently must be so read and declared non-actionable as a matter of law. *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 442, 181 N.E.2d 105, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 114, 83 S. Ct. 148; *Hambric v. Field Enterprises, Inc.* (1964), 46 Ill. App. 2d 355, 358, 196 N.E.2d 489.

In sum, the earlier of the broadcasts said: that the station's Fact Finding Unit had uncovered a scheme, a sham, and a swindle involving millions of dollars of unpaid property taxes, some churches and some slumlords; that the scandal involves buildings donated as gifts to churches in transactions handled by an enterprising lawyer who turned them into profit for himself; and that some properties end up being owned not only by the church but also by the lawyer, whose name is Bernard Allen Fried. The broadcasts described a transaction in which property donated to the First Church of Deliverance at Fried's suggestion ended up being sold by Fried's realty company. He was said to be in housing court once or twice a week for building violations on these properties. Saying Fried did those things does not say that he is unskilled or dishonest in dealing with his clients. This is true even without resort to the rule of innocent construction.

The broadcasts continued with these statements: that Fried, for many years a lawyer for the First Church of Deliverance, suggested that the church set up the Community Redemption Corporation to handle property it acquired; that church officials are listed as the officers of the corporation, and Ralph Goodpasteur, who is listed as the corporation's president, was contacted and did not even remember he was affiliated with the company; that Reverend Cobbs, the pastor of the church, is on vacation in

Mexico, and when reached through an intermediary, claimed he was not aware Community Redemption held any property; that church officials deny signing any deeds, but investigation has found Community Redemption was involved in 66 real estate deals in just a two-year period; that if church officials didn't sign their names on the documents, who did? That the Fact Finder Unit did not know, but every deed was prepared by Bernard Allen Fried; that of the 66 deals, 27 properties were sold; and that the church says it never saw any of the money, so where did it go? To report that church officials when questioned by TV station investigators denied knowledge of transactions and denied any connection with the corporation under investigation does not say Fried was incompetent or dishonest; in fact, it says nothing about him at all except that he prepared the deeds.

The broadcasts described the fate of buildings Fried arranged to be donated to the church. "Often these properties are run into the ground, repairs are not done and property taxes are not paid. We have no evidence church officials know what's happening with Community Redemption, but wittingly or unwittingly, the First Church of Deliverance is a slumlord." A lawyer's duties to his client are numerous, but to say Fried's client is a slumlord does not say that Fried fell short in performing those duties. Nor does the fact that the client owes property taxes. Defendants refer us to the recent appellate court decision in *Rasky v. Columbia Broadcasting System, Inc.* (1981), 103 Ill. App. 3d 577, 431 N.E.2d 1055. That case held that the term slumlord, as used in the publications in that case, is susceptible of an innocent construction. We need not reach this question because Fried's client, not Fried, is accused of being a slumlord.

■■ ■ Finally, it was stated that based on the reports contained in the broadcasts the County Treasurer and State's Attorney will investigate the real estate deals, that the State's Attorney will file 35 suits for back taxes, that the Internal Revenue Service is considering legal action against Fried, and that 32 suits were filed by the State's Attorney against Fried and his companies. These statements that investigations have or will be begun or that lawsuits have been filed are not libelous. (*Homestead Realty Co. v. Stack* (1978), 57 Ill. App. 3d 575, 373 N.E.2d 429.) In *Homestead* the court observed that to state that a lawsuit involving racial steering was filed against plaintiff did not accuse plaintiff of racial steering. A statement that legal action was being considered against plaintiff or that it may have been actually commenced is not tantamount to an accusation of crime. The decision in *Reed v. Albanese* (1966), 78 Ill. App. 2d 53, 223 N.E.2d 419, is also instructive on this point. In *Reed*, plaintiff, an attorney, claimed libel from a news story which carried the headline "Reed Jailed for Housing Violations" and reported that the plaintiff had been found

guilty of housing violations. The court affirmed summary judgment for defendant, finding that the news story did not constitute libel *per se*, notwithstanding the fact that the news story charged Reed with actually having been jailed, and held:

> "The violations *did not involve moral turpitude* and were not infamous crimes nor indictable offenses." (Emphasis added.) (78 Ill. App. 2d 53, 60.)

The purely regulatory offense of failing to conform property to housing code requirements and the purely civil liability which attaches from a judgment that delinquent property taxes must be paid are not the types of legal infractions which involve moral turpitude. Clearly, a suggestion that Fried's activities are being investigated for such regulatory offenses but which stops short of directly accusing him of any culpability is *a fortiori* nonactionable.

We conclude that the circuit court did not err in granting defendants' motion for judgment on the pleadings because the broadcasts were not libelous *per se*. Accordingly, the judgment of that court is affirmed.

Affirmed.

McNAMARA and RIZZI, JJ., concur.