Amelia KING and Levolia Ellens, Plaintiffs,

v.

Rosemarie ARMSTRONG, George Marsh, James McGrady, Frank Mikrut, and Joe Bialek, Defendants.

No. 84 C 9439.

United States District Court, N.D. Illinois, E.D.

Dec. 9, 1985.

Chanon Williams, Chicago, Ill., for plaintiffs.

Donald L. Mrozek, Peter D. Sullivan, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

Before the Court is defendants' motion, pursuant to Federal Rule of Civil Procedure 56, for partial summary judgment on a single count of plaintiffs' complaint. For the reasons stated herein, defendants' motion is granted.

### I. FACTS

This is an action alleging violations of the Federal Credit Union Act and state laws of contract and defamation. The action was brought by Amelia King and Levolia Ellens against Rosemarie Armstrong, George Marsh, James McGrady, Frank Mikrut, and Joe Bialek. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331. The instant motion for summary judgment concerns only Count III of plaintiffs' complaint, which alleges that the defendants committed libel against Amelia King.

Plaintiff's libel claim arises out of the defendants' publication of a meeting notice. The plaintiff is employed by the Social Security Administration and is a member of the Chicago Area Office Federal Credit Union (Credit Union). The defendants are members of the Board of Directors of the credit union. In April 1983, the Board of Directors appointed plaintiff to the Supervisory Committee of the credit union. On or about March 22, 1984, plaintiff attempted to deposit and withdraw some funds from her account at the credit union, but because a hold was placed on her deposit her withdrawal was denied. On March 23, 1984, plaintiff presented her withdrawal request to the treasurer of the credit union who issued King a check.

On April 17, 1984, the Board of Directors held its monthly meeting at which it discussed the check issuance. The Board determined that the check was issued improperly, and voted to suspend King from the Supervisory Committee. In accordance with credit union by-laws, the Board was required to convene a special meeting of the credit union membership and submit the suspension to the members for approval. On May 1, 1984, the Board of Directors posted and distributed to credit union members the following notice:

To: All Members of Chicago Area Office Federal Credit Union

From: Board of Directors Chicago Area Office Federal Credit Union

Subject: Suspension of Supervisory Committee Member

At the Board of Director's monthly meeting held on April 17, 1984, the following order of business was addressed:

That on March 23, 1984, Amelia King willingly and knowingly did accept a check for illegal funds (in an undetermined amount) issued by a director unauthorized to issue checks.

Based on information obtained from National Credit Union Administration, Illinois Credit Union League, and CUNA Mutual Insurance Group, the Board of Directors found it imperitive [sic] and expedient that proper action be taken in order to protect and safeguard the bond ability, and future of your Credit Union. YOU, THE MEMBERSHIP, MAKE THE DIFFERENCE. ATTEND TODAY'S SPECIAL MEETING AND VOTE FOR THE FUTURE OF YOUR CREDIT UNION.

THE SPECIAL MEETING WILL BE HELD AT 5:00 P.M. IN THE EAST SIDE AUDITORIUM.

The plaintiff King alleges that this notice is libelous. The defendants submitted this motion for partial summary judgment on the libel count.

## II. DISCUSSION

The above facts are not disputed. The remaining legal issues include: (1) whether the notice constitutes libel *per se;* (2) whether the notice was substantially true; (3) whether the notice was an expression of opinion; and (4) whether King suffered special damages necessary to support libel *per quod.* Since it holds for the defendants on the first and fourth issues, the Court need not address the second and third issues.

### A. *Libel Per Quod*

From Count III, it is unclear whether the legal theory under which King proceeds is one of libel *per quod* or libel *per se.* Nevertheless, the Court is bound to construe the pleadings liberally and in the light most favorable to the plaintiff. Accordingly, the Court will assume that the plaintiff alleges defamation under both *per quod* and *per se* theories.

 Words may be actionable as libel *per quod* if they are actually defamatory and if specific damage is alleged. *American Pet Motels, Inc. v. Chicago Veterinary Medical Association,* 106 Ill.App.3d 626, 62 Ill.Dec. 325, 435 N.E.2d 1297 (1st Dist.1982). Under Fed.R.Civ.P. 9(g), the pleading of special damages in an action for libel *per quod* "shall be specifically stated." *Action Repair, Inc. v. ABC,* 776 F.2d 143, 149 (7th Cir.1985). The damage allegation found in Count III states that King has been injured in her reputation,

sustaining damages of $100,000. This allegation does not constitute a sufficient statement of special damages for purposes of Rule 9(g).

■ While there is no hard and fast formula for determining whether an item of special damages has been stated with sufficient specificity, it is clear that the complainant must do more than allege that the injury suffered was the natural result of the alleged libel. *Spelson v. CBS, Inc.*, 581 F.Supp. 1195, 1201 (N.D.Ill.1984). At the very least, an allegation of special damage must be "explicit." *Id.* Thus in *Paul v. Premier Elec. Const. Co.*, 581 F.Supp. 721 (N.D.Ill.1984), the plaintiff's special damage allegation was insufficient where it claimed injury to the plaintiff's good name, reputation and business in the amount of $12,500,000. The complaint alleged no basis for the figure, no connection between the defamatory statement and the damage, and did not specify the nature of the damage. *Id.* at 274. The instant damage allegation suffers from the same deficiency.

Not only is the plaintiffs' pleading of specific damages insufficient, but plaintiffs raise no genuine issue as to the existence of special damages. In their submissions to the Court the defendants asserted that the plaintiff King suffered no special damages, and supported their assertion with a copy of King's deposition testimony. Plaintiffs rested entirely on their pleadings with respect to the special damage issue. Since it finds that the plaintiffs failed to establish a genuine issue of fact regarding the absence of special damages, the Court grants defendants' motion for summary judgment on the claim of libel *per quod*.

### B. *Libel Per Se*

Words are libelous *per se* if they are "so obviously and naturally hurtful to the person aggrieved that proof of their injurious character can be, and is, dispensed with." *Reed v. Albanese*, 78 Ill.App.2d 53, 58, 223 N.E.2d 419, 422 (1st Dist.1966). In Illinois, there are four categories of words which may be actionable as libel *per se*. These categories consist of words which impute: (1) the commission of a criminal offense;

(2) infection with a communicable disease; (3) unfitness or want of integrity in the performance of the duties of an office or employment; and (4) the lack of ability to perform in his or her business, trade or profession. *Fried v. Jacobson*, 107 Ill. App.3d 780, 63 Ill.Dec. 564, 438 N.E.2d 495 (1st Dist.1982).

■ The current Illinois standard employed in examining statements alleged to be defamatory is set forth in *Chapski v. Copley*, 92 Ill.2d 344, 65 Ill.Dec. 884, 442 N.E.2d 195 (1982):

> We therefore hold that a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; *if*, as so construed, *the statement may reasonably be innocently interpreted* or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*. This preliminary determination is properly a question of law to be resolved by the court in the first instance; whether the publication was in fact understood to be defamatory or to refer to the plaintiff is a question for the jury should the initial determination be resolved in favor of the plaintiff. *Id.* at 199. [Emphasis supplied.]

This current rule is known as the "reasonable innocent construction rule." This rule requires "a statement be analyzed with the words and implications given their natural and obvious meaning in as much of a current day context as possible." *Action Repair*, at 145. In the context of a summary judgment motion, the reasonable innocent construction rule requires that the court determine as a matter of law, whether an alleged defamatory statement can reasonably be interpreted as falling outside of one of the four aforementioned categories of libel *per se*. Only if the statement is not reasonably capable of such innocent construction will an issue of fact remain for the fact-finder, and thereby survive summary judgment.

In the instant case the plaintiffs contend that the notice to the credit union members imputes King's commission of a criminal offense and her want of integrity in the performance of the duties of an office or employment. These contentions must be measured under the "reasonable innocent construction rule."

### 1. *Commission of a Criminal Offense*

The context in which the allegedly defamatory statement appeared was a notice dated May 1, 1984, to credit union members of an upcoming special meeting of the membership. The notice was posted on various bulletin boards and delivered to credit union members. The May 1 notice was the second notice of a special meeting to consider King's suspension. The first notice, dated April 23, 1984, stated simply that a special meeting would be held regarding the suspension of a supervisory committee member, but neither identified King nor described the circumstances which gave rise to the meeting. The more explicit May 1 notice was apparently necessary to comply with credit union by-laws which require that a special meeting notice state with particularity the purpose for which it is held.

█ Defendants contend that, because the allegedly libelous statement was made in a meeting notice, it could reasonably be interpreted to merely describe the issue which the Board of Directors addressed and which the meeting would address, and not to actually accuse King of a crime. However, the notice does more than merely announce the purpose of the special meeting. The natural and obvious meaning of the notice, and its most reasonable interpretation, is that the Board of Directors suspended King because they determined that King in fact "willingly and knowingly did accept a check for illegal funds." The notice further asks credit union members to respond to the Board's determination by attending a special meeting and voting on King's permanent suspension. The message amounts to an accusation by the Board of Directors that King committed some wrong. The remaining question is whether the imputed act falls within the definition of crime which would entitle plaintiff to recovery under libel *per se.*

To be actionable as libel *per se,* for imputing a criminal offense, the defection charged must be an indictable one, involving moral turpitude and punishable by death or by imprisonment otherwise than in lieu of fine. *Mitchell v. Peoria Journal-Star, Inc.,* 76 Ill.App.2d 154, 160, 221 N.E.2d 516, 520 (3d Dist.1966). The charge need not reflect the specificity of an indictment, but must directly or indirectly impute the commission of a crime which is so serious that damage to the accused must be presumed from the words alone. *See American Pet Motels,* 106 Ill.App.3d at 627, 62 Ill.Dec. at 328, 435 N.E.2d at 1300. Again, the reasonable innocent construction rule governs the interpretation of the statement.

Although the notice in this case clearly suggests that King committed some wrong, the notice is unclear regarding the gravity of the wrong. Knowingly accepting a check for illegal funds could suggest a crime of theft or receipt of stolen property, or it could amount to no crime at all. Moreover, the context of the statement is not helpful in measuring the seriousness of the alleged crime. The fact that the Board of Directors suspended King and the suggestion in the notice that the bond ability and future of the credit union were threatened add seriousness to King's act. However, the mention that the check for the illegal funds was issued by a director unauthorized to issue checks shifts some guilt to the director and tempers King's wrong. Considering the context of statement, and its natural and obvious meaning, the Court finds that a reasonable person could interpret the statement as imputing conduct falling short of a serious crime. The words are simply not so obviously and naturally hurtful that damage to King must be presumed. Accordingly, the statement is not actionable *per se* as imputing the commission of a crime.

## 2. *Want of Integrity*

Plaintiff alleges that the notice imputed her want of integrity and unfitness in the office of Supervisory Committee Member. As previously discussed, the notice reasonably and naturally conveys that the Board of Directors found plaintiff to have accepted a check for illegal funds. The message implies that plaintiff lacks integrity as a supervisory committee member, and it cannot reasonably be innocently interpreted otherwise. The remaining question is whether Supervisory Committee membership is an "office" as contemplated by the Illinois libel law.

Illinois courts have found statements libelous *per se* which have imputed a person's lack of integrity in the office of judge (*Cooper v. Illinois Publishing & Printing Co.*, 218 Ill.App. 95 (1st Dist.1920), mayor (*Lundstrom v. Winnebago Newspapers, Inc.*, 58 Ill.App.2d 33, 206 N.E.2d 525 (2d Dist.1965)), canvassing board member (*Hotz v. Alton Telegraph Printing Co.*, 324 Ill.App. 1, 57 N.E.2d 137 (4th Dist. 1944)), state's attorney (*McDonald v. Chicago Daily News Pub. Co.*, 252 Ill.App. 61 (1st Dist.1929)), city board chairman (*Costello v. Capitol Cities Media Inc.*, 111 Ill. App.3d 1009, 67 Ill.Dec. 721, 445 N.E.2d 13 (5th Dist.1982)), and alderman (*Catalano v. Pechous*, 83 Ill.2d 146, 50 Ill.Dec. 242, 419 N.E.2d 350 (1980)). Statements tending to injure persons in their trade or business are also clearly actionable *per se. See, e.g., Crinkley v. Dow Jones & Co., Inc.*, 119 Ill.App.3d 147, 74 Ill.Dec. 636, 456 N.E.2d 138 (1st Dist.1983). But persons defamed in a nonpublic office, which is not an office of employment, seem to have no cause of action for libel *per se.* This Court reached the same conclusion in another recent case where it stated, "this category of libel *per se* speech is limited to those cases where the individual allegedly defamed is the holder of a public office." *Spelson v. CBS, Inc.*, 581 F.Supp. 1195, 1205 (N.D.Ill. 1984). This conclusion is not only consistent with Illinois precedent, but is consistent with the rationale of libel *per se.* Statements are libelous *per se* only if they are so obviously injurious to a person that damages may be presumed. The amount of injury suffered by one who is defamed in public office or in a profession or livelihood is naturally great, and therefore the existence of injury is presumed. In contrast, the harm accruing to a person who is defamed in a private endeavor, outside of the person's trade or business, is not obvious. The latter situation requires proof of damages.

In the instant case, plaintiff King alleges injury to her office of Supervisory Committee Member. The credit union is a private, voluntary organization comprised of local federal employees. The credit union membership elects a Board of Directors, which in turn appoints several executive officers and committees, including the Supervisory Committee, to assist in operating the credit union. Within the committees are committee officers and members. Plaintiff King's position as a member of the Supervisory Committee was uncompensated, consumed only a few hours per month, and was entirely outside of her full-time employment with the Social Security Administration. Considering the private nature of King's office, the Court finds that any defamation of plaintiff in that office is not so obviously harmful that it is actionable *per se.*

## III. CONCLUSION

For the reasons stated above, defendants' motion for partial summary judgment is granted. Accordingly, Count III of plaintiffs' complaint is dismissed.

IT IS SO ORDERED.