FRANZ RODRIGUEZ-ERDMANN, Plaintiff-Appellant, v. RAVENSWOOD HOSPITAL MEDICAL CENTER *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—87—1719

Opinion filed October 11, 1989.

John J. Lowrey, P.C., of Chicago (John J. Lowrey and Mary Jo Smerz, of counsel), for appellant.

Katten, Muchin & Zavis, of Chicago (James C. Murray, Jr., Michael R. Callahan, and Laurence H. Lenz, Jr., of counsel), for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff-appellant, Franz Rodriguez-Erdmann, M.D. (Rodriguez-Erdmann), appeals from the circuit court order dismissing his defamation action against defendants-appellees, Ravenswood Hospital Medical Center, Ravenswood Health Care Corporation, and Henry J. Kutsch (Ravenswood). On appeal, Rodriguez-Erdmann asserts that his complaint sufficiently alleges a defamation action because the defendants' statements constituted libel *per se*, were not privileged, and even if the statements were privileged, malice was sufficiently alleged to defeat any claim of privilege. We affirm.

The facts as alleged in the complaint are as follows. In 1982, Rodriguez-Erdmann was appointed to Ravenswood's provisional medical staff, a probationary appointment terminating in two years if he was not promoted to a higher category of staff membership. Rodriguez-Erdmann served as the coordinator of the internal medicine clinic, outpatient department from 1983-1984. As coordinator of the internal medicine clinic, his responsibilities included the supervision of the resident-physicians in training.

Prior to joining the staff at Ravenswood, Rodriguez-Erdmann was a professor of medicine at the University of Illinois from 1971 to 1979 and was an assistant professor of medicine at Harvard University from 1969 to 1971. Rodriguez-Erdmann received teaching awards in 1973, 1974, 1975, 1976 and 1977.

Beginning in 1983, Rodriguez-Erdmann offered constructive comments to various administrators at Ravenswood about deficiencies in

the internal medicine and family practice residency programs. He and other physicians asked the chief administrative officer, Henry J. Kutsch, to review patients' charts. Rodriguez-Erdmann's allegations led to numerous counterallegations by the residents and others that plaintiff had demonstrated a marked inability or unwillingness to adequately communicate with the residents in a professional manner. Ravenswood's board of trustees appointed an *ad hoc* committee to review the accusations, including the complaints of inadequacy in the internal medicine and family practice residency programs.

After a four-month investigation, the committee issued a 17-page report, with approximately 100 pages of exhibits. The exhibits included a 52-page case audit prepared under the supervision of Dr. Terry Ostrowski.

According to plaintiff, the *ad hoc* report documented major compromises in patient care by the residents at Ravenswood, some of which caused serious consequences to the patients. Plaintiff attached nine pages of this audit to his complaint and also referred therein to the withdrawal by the Accreditation Council for Graduate Medical Education of its provisional accreditation of the family practice residency program and the placement of the internal medicine residency program on probation.

However, the *ad hoc* committee made the following recommendations concerning plaintiff:

"The Committee Recommends that [plaintiff's] interaction with the residents be limited to classroom as opposed to clinical supervision. The Committee further recommends that his participation on the Ward Service be limited and that the Department Classification and Advisory Committee consider the need for disciplinary action relating to his extraordinary method of communicating criticisms about the medical care provided by residents."

The classification and advisory committee reviewed the report, discussed Rodriguez-Erdmann's status, and recommended that he not receive a permanent staff appointment. Plaintiff retained his probationary privileges until a final determination was made. After numerous hearings, several of which were attended by Rodriguez-Erdmann and/or his counsel, the classification committee, the medical board and the department of medicine recommended that plaintiff be denied a permanent staff appointment. The Ravenswood board adopted that recommendation, and on May 1, 1985, Rodriguez-Erdmann's privileges as a staff member at Ravenswood were terminated. On September 6, 1985, plaintiff filed a lawsuit for retaliatory discharge

against Ravenswood. On October 2, 1985, plaintiff and his counsel in conjunction with the Illinois Public Action Council held a press conference announcing the filing of the lawsuit and charging that he "was fired after speaking out about problems of malpractice." Specifically, Illinois Public Action Council spokesman, Robert Kramer, stated:

"The lawsuit *** alleges that he was relieved of his medical privileges because he attempted, both, to uncover and to correct instances of malpractice at the hospital and substandard care of various types which caused death and serious injury to certain patients.

*** [T]he experience of [plaintiff] at Ravenswood Hospital, is a case in point of the attempt to cover up malpractice in the medical industry, both, by doctors and hospitals."

In addition, plaintiff stated that he could cite at least 19 incidents of improper treatment at Ravenswood Hospital. These comments prompted numerous inquiries to Ravenswood from the media.

Ravenswood responded by issuing a three-page press release on October 3, 1985, which included the following:

"Dr. Franz Rodriguez-Erdmann's suit against Ravenswood Hospital Medical Center is based on the action of the Medical Staff and the Board of Directors to not reappoint Dr. Rodriguez-Erdmann to the Medical Staff following his two-year probationary status.

This action was taken after many months of investigation and review of numerous complaints regarding Dr. Rodriguez-Erdmann's disruptive behavior; inability to communicate and function as a professional in a disciplined environment with residents, faculty and other Medical Staff members; and other issues relating to his performance on the staff of this hospital.

At all levels of this review and investigative process there was full disclosure of all related facts and full minutes of all proceedings and actions taken. On all occasions, the investigating and Medical Staff committees concluded that Dr. Rodriguez-Erdmann's allegations regarding the quality of care or performance provided by residents or faculty members at this hospital was [sic] unsupported by the facts as determined by his own peers.

We stand by our position that the decision-making process regarding [plaintiff] was exhaustive. We will never and have not compromised our standards of care or the integrity of this institution to accommodate individual disruptive and unprofes-

sional behavior. This hospital conducts, and will always conduct, its affairs in the best interests of our patients and its Medical Staff."

Ravenswood distributed this press release to television and newspapers. On October 13, 1985, WLS-TV aired another story concerning plaintiff's lawsuit wherein Kramer charged, "Doctors who insist upon quality should be rewarded for their trouble and their attitude, rather than punished and have their staff privileges revoked. This instance is a question of sheer punishment by this hospital." In this news story plaintiff and his counsel stated that the hospital's internal investigation supported his allegations of malpractice. Plaintiff also asserted that "if not making compromise [sic] for the well-being of my patients, is to being [sic] a trouble-maker, I accept the charge." On October 17, 1985, Ravenswood issued a statement to hospital staff members and employees which stated in pertinent part:

"Please be assured that the recent allegations of malpractice against the Ravenswood Hospital Medical Center is [sic] not true. We believe that the allegations leveled by Dr. Rodriguez-Erdmann reflect his disappointment with the decision of the Medical Staff and Board of Directors not to appoint him to a permanent position on the Medical Staff after a two-year probationary period."

Plaintiff filed a two-count complaint alleging defamation based upon the press release and hospital staff memo. The circuit court dismissed the complaint with prejudice and this appeal followed.

On appeal, plaintiff argues that Ravenswood's statements are libelous *per se* because they prejudice him in his profession, impute the inability to perform and want of integrity in the discharge of his duties. Plaintiff also ‚ asserts that the statements were made with knowledge of their falsity or in reckless disregard of their truth or falsity. We disagree.

■■ On review, we accept as true all well-pled facts in the complaint as well as the reasonable inferences which may be drawn therefrom. (*Open Kitchens, Inc. v. Gullo International Development Corp.* (1984), 126 Ill. App. 3d 62, 63, 466 N.E.2d 1313, 1314.) Each case alleging defamation must be decided based upon its own facts. *Bruck v. Cincotta* (1977), 56 Ill. App. 3d 260, 266, 371 N.E.2d 874, 879.

■■ Defamatory writing is either libelous *per se* or *per quod*. (*Bruck v. Cincotta*, 56 Ill. App. 3d at 263, 371 N.E.2d at 877.) An action for defamation based upon libel *per se* requires that the words used by the defendant are in and of themselves so obviously and ma-

terially harmful to the plaintiff that a showing of special damages or the injurious character is unnecessary. (*Bruck*, 56 Ill. App. 3d at 264; *Owen v. Carr* (1986), 113 Ill. 2d 273, 277, 497 N.E.2d 1145, 1147.) To be defamatory *per se*, words themselves, without the aid of extrinsic facts to explain them, must be so obviously and inevitably hurtful that damage is presumed. (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 348, 243 N.E.2d 217, 220.) A writing is libelous *per se* and is actionable without proof of special damages if it contains a false statement which imputes to the plaintiff any of the following: (1) commission of a crime; (2) infection with a loathsome disease; (3) unfitness or want of integrity in performing the duties of an office or employment; or (4) an inability to perform in one's business, trade or profession. *Owen*, 113 Ill. 2d at 277; *Allen v. Ali* (1982), 105 Ill. App. 3d 887, 889, 435 N.E.2d 167, 168-69; *Britton v. Winfield Public Library* (1981), 101 Ill. App. 3d 546, 548, 428 N.E.2d 650, 652.

With respect to the statement that was published to the hospital employees, defendants argue that it was nonactionable as an expression of opinion. We agree. As previously stated, the hospital statement included the following language:

"Please be assured that the recent allegations of malpractice against the Ravenswood Hospital Medical Center is [*sic*] not true. We believe that the allegations leveled by Dr. Rodriguez-Erdmann reflect his disappointment with the decision of the Medical Staff and Board of Directors not to appoint him to a permanent position on the Medical Staff after a two-year probationary period."

■ In this statement defendants expressed their belief that the allegations were raised due to plaintiff's disappointment and their opinion that the allegations were untrue. (*Renard v. Columbia Broadcasting System, Inc.* (1984), 126 Ill. App. 3d 563, 467 N.E.2d 1090.) However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. (*Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 339-40, 41 L. Ed. 2d 789, 805, 94 S. Ct. 2997, 3007.) The law of libel does not provide redress for expression of every opinion touching on a person's capabilities or qualifications, no matter how much the complained-of statement may injure that person in his or her own conception. (*Anderson v. Matz* (1978), 67 Ill. App. 3d 175, 178, 384 N.E.2d 759, 761.) Especially in the field of medicine, where equally capable doctors may arrive at conflicting conclusions regarding proper treatment for a patient, allegedly libelous statements

must be carefully examined in context.

Defendants argue that the statements in the press release are not libel *per se* because the plaintiff's skills as a physician were not questioned and the comments can reasonably be construed as criticizing only his ability to interact with his colleagues and the residents. (*Powers v. Delnor Hospital* (1986), 148 Ill. App. 3d 844, 847, 499 N.E.2d 666, 668.) We find that the plaintiff's communication skills are critical to his profession. As previously stated, the committee recommended that Rodriguez-Erdmann's interaction with residents be restricted to classroom supervision, excluding clinical supervision. As a physician, as well as the coordinator of the internal medicine clinic, clinical supervision constituted a critical aspect of plaintiff's professional responsibilities. Accordingly, we do not agree that the statements do not reflect upon plaintiff's professional competence. However, the following statements in the press release must be reviewed in context:

"Dr. Franz Rodriguez-Erdmann's suit against Ravenswood Hospital Medical Center is based on the action of the Medical Staff and the Board of Directors to not reappoint Dr. Rodriguez-Erdmann to the Medical Staff following his two-year probationary status.

This action was taken after many months of investigation and review of numerous complaints regarding Dr. Rodriguez-Erdmann's disruptive behavior; inability to communicate and function as a professional in a disciplined environment with residents, faculty and other Medical Staff members; and other issues relating to his performance on the staff of this hospital.

At all levels of this review and investigative process there was full disclosure of all related facts and full minutes of all proceedings and actions taken. On all occasions, the investigating and Medical Staff committees concluded that Dr. Rodriguez-Erdmann's allegations regarding the quality of care or performance provided by residents or faculty members at this hospital was [*sic*] unsupported by the facts as determined by his own peers.

We stand by our position that the decision-making process regarding [plaintiff] was exhaustive. We will never and have not compromised our standards of care or the integrity of this institution to accommodate individual disruptive and unprofessional behavior. This hospital conducts, and will always conduct, its affairs in the best interests of our patients and its Medical Staff."

■ In *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195, 199, our supreme court gave the following explanation of how to apply the rule of innocent construction to determine whether language constitutes libel *per se*:

> "[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning \*\*\*. This preliminary determination is properly a question of law to be resolved by the court in the first instance; whether the publication was in fact understood to be defamatory \*\*\* is a question for the jury should the initial determination be resolved in favor of the plaintiff."

■ Applying the innocent construction rule to the press statements, we find that they are responsive to plaintiff's remarks to the press and explain Ravenswood's position. The following elements are essential in establishing the defense of a qualified privilege: good faith by the defendant, an interest to be upheld, a statement limited in its scope to that purpose, a proper occasion, and publication in a proper manner and to proper parties only. *Welch v. Chicago Tribune Co.* (1975), 34 Ill. App. 3d 1046, 1051, 340 N.E.2d 539, 543.

■ Ravenswood investigated the matter for many months and concluded that plaintiff's behavior was disruptive and that he was unable to communicate in a professional manner. Ravenswood also concluded that plaintiff's allegations regarding the quality of medical care were unsupported by the facts as determined by his own peers. Ravenswood had to uphold its reputation as a health care provider, and its statements were limited to that purpose. Publication by Ravenswood was on a scale comparable to plaintiff's presentation. We therefore find that Ravenswood's response constituted a qualified privileged. However, a qualified privilege may lose its character on proof of actual malice. *Welch v. Chicago Tribune Co.*, 34 Ill. App. 3d at 1052, 340 N.E.2d at 543.

■ Similarly, those who, by the vigor and success with which they seek the public's attention, are classified as public figures may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth. Public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved and have invited attention and comment. (*Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 345, 41 L. Ed. 2d 789, 808, 94 S. Ct. 2997, 3009.) Usually public figures enjoy significantly greater access to the channels of effective communication and hence have a more realistic op-

portunity to counteract false statements than private individuals normally enjoy. The fact that the self-help remedy of rebuttal, standing alone, is inadequate does not mean that it is irrelevant. *Gertz*, 418 U.S. at 344, 41 L. Ed. 2d at 807-08, 94 S. Ct. at 3009.

■ We find that the plaintiff is a public figure since he thrust himself to the forefront of the controversial issue of medical malpractice and that he counteracted the defendants' statements during his second press conference.

■ The issue remaining is whether defendant exercised actual malice in the publication of the statement. We find as a. matter of law that the facts alleged cannot support a finding of actual malice. (*Welch v. Chicago Tribune Co.* (1975), 34 Ill. App. 3d 1046, 340 N.E.2d 539.) Actual malice is said to be shown where the defendant made the false, defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not. Reckless disregard for the truth exists when a defendant in fact entertained serious doubts as to the truth of his publication or had a high degree of awareness of probable falsity. (*Berkos v. National Broadcasting Co.* (1987), 161 Ill. App. 3d 476, 488, 515 N.E.2d 668, 675.) Plaintiff asserts that Ravenswood published the statements with knowledge that the statements were false or with reckless disregard of whether the statements were false. In support thereof, he attaches to his complaint nine pages of the Committee's 17-page report, which included 100 pages of exhibits. Under these circumstances, we cannot conclude that Ravenswood's statements were made with knowledge that the statements were false or with reckless disregard of the truth.

■ Moreover, the granting of a motion to dismiss for failure to state a cause of action should be affirmed on appeal only when no set of facts can be proved under the pleadings which will entitle plaintiff to relief. (*Payne v. Mill Race Inn* (1987), 152 Ill. App. 3d 269, 275, 504 N.E.2d 193, 197.) Ravenswood did not disclose any facts supporting its statements due to the medical studies act (Ill. Rev. Stat. 1985, ch. 110, par. 8—2101).

The Illinois medical studies act provides in pertinent part:

> "All information, interviews, reports, statements, memoranda or other data of *** committees of [licensed or] accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, (but not the medical records pertaining to the patient), used in the course of internal quality control ***

or for improving patient care, shall be privileged, strictly confidential and shall be used only for medical research, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges, except that in any hospital proceeding to decide upon a physician's staff privileges, or in any judicial review thereof, the claim of confidentiality shall not be invoked to deny such physician access to or use of data upon which such a decision was based." Ill. Rev. Stat. 1983, ch. 110, par. 8—2101.

"Such information, records, reports, statements, notes, memoranda, or other data shall, not be admissible as evidence, nor discoverable in any action of any kind in any court or before any tribunal, board, agency or person." Ill. Rev. Stat. 1983, ch. 110, par. 8—2102.

"The disclosure *** is unlawful, and any person convicted of violating any of the provisions *** is guilty of a Class A misdemeanor." Ill. Rev. Stat. 1983, ch. 110, par. 8—2105.

The purpose of the legislation is to ensure the effectiveness of professional self-evaluation, by members of the medical profession, in the interest of improving the quality of health care. The act is premised on the belief that, absent the statutory peer-review privilege, physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues. *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 479-80, 468 N.E.2d 1162, 1168.

Accordingly, we conclude that plaintiff has failed to allege facts that would entitle him to relief. Moreover, given the Medical Studies Act, no set of facts could be proven that would entitle the plaintiff to relief. The judgment of the circuit court is therefore affirmed.

Affirmed.

WHITE and CERDA, JJ., concur.